729 S.E.2d 822

**Lola Melinda WATKINS, Appellant**

v.

**McDOWELL COUNTY BOARD OF EDUCATION, et al., Appellees.**

No. 11–0420.

Supreme Court of Appeals of West Virginia.

Submitted May 23, 2012.

Decided June 14, 2012.

---

Jane Moran, Jane Moran Law Office, Williamson, WV, for Appellant.

Gregory W. Bailey, Bowles, Rice, McDavid, Graff & Love, LLP, Charleston, WV, for Appellees.

PER CURIAM:

Appellant Lola Melinda Watkins appeals a final order entered February 9, 2011, in the Circuit Court of Kanawha County, which affirmed a decision by the Administrative Law Judge ("ALJ") of the West Virginia Public Employees Grievance Board denying Appellant's grievance of her termination from employment as a teacher.

Upon careful review of the briefs and argument of counsel, the joint appendix of the parties and the applicable legal authority, this Court affirms the February 9, 2011, final order of the circuit court.

I. Factual and Procedural History

On March 6, 2008, Appellant was employed by the McDowell County Board of Education as a sixth grade science teacher at War Annex. That morning, Appellant sent one of

her students, J.B.[1], to the assistant principal's office due to his disruptive behaviour in her classroom.[2] Upon arriving at the office of Assistant Principal Cheryl Cruey, he called his home and informed his aunt and caretaker, Clarice Bailey ("Ms. Bailey"), her sister and his father[3] that he had been "biffed" from Appellant's classroom. Shortly thereafter, the three arrived at the school and met with Assistant Principal Cruey. During the course of the meeting, they expressed their concern that, in their view, Appellant singled out J.B. and treated him unfairly.[4]

Eventually, Appellant joined the meeting in Assistant Principal Cruey's office. When the conversation became heated, Assistant Principal Cruey adjourned the meeting and indicated that the parties could set up another meeting at another time. Assistant Principal Cruey directed Appellant to return to her classroom and Ms. Bailey to leave the building. The events that next transpired are much disputed by the parties.

Appellant left Assistant Principal Cruey's office first and Ms. Bailey followed her into the hallway. In a statement written by Appellant immediately following the incident, she stated, inter alia, that

As I walked out of the office, Ms. Bailey followed me and began to push me. She stated, "You better remember. I know where you live." She hit her body into mine and knocked me off balance. I yelled for someone to call the police. Ms. Bailey began to swing at my head. She put all of her weight into a punch at my right side of my head. She left a red mark on my ear and side of my head. I called 911.

However, at the Level III hearing before the ALJ, Appellant's testimony regarding the altercation with Ms. Bailey was quite different. She testified that after she left Assistant Principal Cruey's office to return to her classroom, the following occurred:

I am talking to my students as I approach the doorway. I say, "Hey, guys, how far did you get on that ..."—and before I could say "solar panel," I had a blow at the back of my head .... it was a fist. It hit me directly, and you could feel it.... I turned around and I stated, "Why did you just hit me for? You really messed up." There was a sign that was in a glass frame hanging on the wall right behind her. I said, "You really messed up. That was a felony," and I pointed to the sign.[5]

(Footnote added)

Appellant further testified that Ms. Bailey hit her "violently and harshly" and that she

started hitting me on the right side of my face with her palm of her hand, slapping the right side of my face, including my ear all the way down to my mouth. I was yelling, "Help! She's hitting me! Somebody call the police! Call 911! Help! She's hitting me! Somebody call the police! Call 911! Help! She's hitting me!" At one point [Ms. Bailey] takes her artificial nails and she cuts the white part of my eye.[6] When she did that, my hands went up in a reflex.

(Footnote added)

According to Appellant, when her hands came up "in defense," Ms. Bailey's glasses fell off of her face. Appellant testified that she did not intend to hit Ms. Bailey.

---

1. It is our customary practice in cases involving minors to refer to them by their initials rather than by their full names. *See e.g., In re Cesar L.,* 221 W.Va. 249, 252 n. 1, 654 S.E.2d 373, 376 n. 1 (2007).

2. Appellant sent J.B. to obtain a Behavior Infraction Form ("BIF"). When a student is "biffed," he or she is excluded from class and sent to a type of detention.

3. At that time, J.B. was being cared for by Ms. Bailey and her sister, Susie Bailey. It appears that his father happened to be at the home on a visit from out of town.

4. On prior occasions, Ms. Bailey spoke with or attempted to speak with Appellant regarding J.B. The testimony of Ms. Bailey and Appellant about what transpired on those occasions differ in many respects.

5. Appellant is referring to a sign indicating that it is a criminal offense to commit an assault or battery on a school employee. The sign was posted in the hallway where the altercation occurred.

6. According to Appellant, she sought medical treatment for her eye following the altercation.

In stark contrast to Appellant's version of events, Ms. Bailey testified that when they left Assistant Principal Cruey's office, Appellant "just started screaming and hollering, I mean just like a crazy person. 'Don't hit me! Don't hit me!'" According to Ms. Bailey, her sister then exited the office at which time Appellant "comes flying over, go to hitting me.... She hit me. She knocked my brown glasses off .... she said, "I'm calling the police. I'm calling the police." Ms. Bailey testified that a student identified as V.W. intervened, grabbed hold of Ms. Bailey and told her not to do anything. She further testified that "[t]he only reason I didn't hit this lady back was because God told me to stand still.... The only reason I stood still was because V.W. grabbed me around the legs and held me, and there was all of those kids over there.... I never put my hands on her."

Ms. Bailey's sister, Susie Bailey, testified that she heard Appellant "screaming, 'Stop hitting me, stop hitting me.' I looked up. My sister was just standing there. Then I heard something go click. Her glasses had hit the floor. [Appellant] was just a-swattin' like that (indicating). Then Clarice said, 'My face is burning.' I said, 'She done scratched you.'" According to Susie Bailey, Appellant was saying "stop hitting me" while "she was swinging.... My sister's like, 'Call the police? You're the one hitting me.'" Susie Bailey testified that she observed scratches on her sister's face and stomach. She further testified that she never saw Ms. Bailey strike Appellant.

Another witness, student M.B.H., testified that she was standing in the hallway when the altercation occurred. She further testified that she saw Ms. Bailey hit Appellant in the back of the head with her fist and that she heard Appellant ask Ms. Bailey why she hit her. According to M.B.H., she then immediately returned to her class and did not tell anyone what she had just observed. We note that the ALJ made a specific finding that M.B.H.'s testimony was not reliable because, among other things, she testified that the altercation occurred during a time frame which was inconsistent with all of the other evidence in that regard. All of the other evidence demonstrated that the altercation occurred in the morning whereas M.B.H. testified that it occurred during her seventh period class, which did not begin until 1:15 p.m. The ALJ further noted that Grievant visited M.B.H.'s home in order to solicit her testimony and that M.B.H.'s version of events was suspiciously more consistent with Grievant's hearing testimony and inconsistent with Grievant's contemporaneous written account of the incident.

Following the altercation, Ms. Bailey reported it to the McDowell County Board of Education and obtained a warrant in McDowell County Magistrate Court for Appellant's arrest.

By letter dated March 10, 2008, from Superintendent Suzette Cook, Appellant was advised that she was being suspended from employment with pay effective immediately "and continuing until the criminal complaint filed in the Magistrate Court of McDowell County is resolved and/or until the McDowell County Board of Education conducts its own investigation to determine whether it should take disciplinary action regardless of the outcome of the criminal complaint." Appellant did not request a hearing with regard to her suspension.

A hearing was conducted on May 1, 2008, upon the request of Superintendent Cook, to ratify Appellant's suspension and to extend same without pay. The hearing officer for the West Virginia Department of Education [7] recommended that Appellant continue on unpaid suspension due to her "failure to maintain a safe and secure environment for students during school hours. [Appellant] should remain on unpaid suspension until such time as the criminal charges can be resolved and the McDowell County Board of

---

7. In 2001, the West Virginia Board of Education voted to intervene into the operation of McDowell County Schools pursuant to its authority under West Virginia Code § 18–2E–5 (2005). Consequently, at all times relevant, the State Superintendent of Schools made all personnel hiring and termination decisions in the McDowell County school system. Accordingly, the West Virginia Board of Education and the West Virginia Department of Education are named parties herein.

Education conducts a full investigation as to the charges presented against [her]." State Superintendent of Schools Steven L. Paine adopted the hearing officer's Recommended Decision.

Meanwhile, Appellant was convicted on the misdemeanor battery charge. She filed an appeal of her conviction in the Circuit Court of McDowell County.

Following an investigation of the matter by the McDowell County Board of Education, Appellee herein, State School Superintendent Paine terminated Appellant's employment upon the recommendation of McDowell County Schools Superintendent Cook. By letter dated October 10, 2008, he advised Appellant that

The basis for your termination is as follows:

On March 6, 2008, while employed as a teacher at War Elementary School, you did hit and/or shove the parent/guardian of one of your students in the hallway of the War Annex. This conduct, which occurred in the view of students, lead to you being charged with and subsequently convicted of battery. Further, even apart from your criminal conviction, your actions constitute insubordination, willful neglect of duty, and immorality.

Thereafter, Appellant filed grievances against the Board protesting her suspension and termination, which were consolidated into the present matter. In the meantime, on November 21, 2008, Appellant's battery conviction was reversed on appeal by the circuit court, which found that Appellant had acted in self defense.[8]

Three days of Level III grievance proceedings before the ALJ were conducted on November 18, 2009, January 25, 2010, and March 29, 2010. During the course of the grievance proceedings, the parties presented evidence of the altercation between Appellant and Ms. Bailey as described previously herein. Additionally, the Board presented evidence obtained from Appellant's own personnel file of prior reprimands and completed "Teacher Observation/Data Collection" forms ("teacher observations") specifically regarding Appellant's previous difficulties in the area of appropriately and effectively communicating with parents and students.

Specifically, the Board presented a letter of reprimand dated October 24, 2005, written by Assistant Superintendent of McDowell County Schools Peggy E. Freeman. The letter recounted an incident involving a profane note apparently written by a student when Appellant was employed at Mount View Middle School. In particular, the letter indicated that Ms. Freeman was

disappointed that [Appellant] would not let [her] deal with this situation before you intervened with one of the parents involved.... I was quite surprised to see you and the grandparent of one of the students involved at my office on Friday evening. Both you and the parent [sic] were so agitated it caused a disturbance in the hallway. I am confused as to why the urgency and the agitation because nothing had been decided regarding the note at that point.... I still am a little confused as to exactly how this incident transpired due to the shouting and accusations made by you that the administration had done nothing.... By placing yourself in the middle, you invite controversy and can hinder the accuracy of an investigation.... West Virginia Board Policy 5310 clearly requires teachers to maintain professional work habits, i.e., to interact appropriately with other students, educational personnel, and parents. It is your professional responsibility to demonstrate this behavior in all activities at Mount View Middle School, in the classroom, during conferences, and on the phone with parents.[9]

**8.** It is noted that in so ruling, the circuit court clearly concluded that, notwithstanding their claims to the contrary in the present grievance, Appellant and Ms. Bailey each hit or struck the other at some point during the altercation. With regard to Appellant, the court indicated that, based upon the evidence presented at the circuit court hearing, it is "pretty evident" that Appellant did, in fact, slap Ms. Bailey. Nevertheless, the circuit court determined that Appellant had a reasonable apprehension of bodily harm and that the prosecution failed to prove beyond a reasonable doubt that she did not act in self-defense.

**9.** At the grievance hearing, Assistant Superintendent Freeman testified that she allowed the school administration to conduct its own investi-

It is undisputed that Appellant did not file a grievance with regard to this letter of reprimand.[10]

A second letter of reprimand dated November 16, 2007, was also introduced at the hearing. This letter, written by Assistant Superintendent of McDowell County Schools Carolyn H. Falin, discussed occasions where Appellant "threatened [students] with additional bookwork and no hands-on experiences" when they failed to bring in requested materials for her class. The letter reiterated that all teachers were notified in writing at the beginning of the school year that lists of materials shall not " 'be mandatory for parents/guardians to purchase, and no child shall be denied participation in school (or otherwise disciplined) if his or her parents/guardians choose not to purchase the items on these lists.' " Assistant Superintendent Falin testified that she wrote the November 16, 2007, letter of reprimand after Assistant Principal Cruey spoke to Appellant three times about her conduct in this regard.

The November 16, 2007, letter also addressed allegations of student harassment by Appellant including "verbal comments about 'poor students' and improper questioning of students in front of the entire class.' " The letter reiterated specific standards of conduct requiring teachers to "[m]aintain a safe and healthy environment, free from harassment, intimidation, [and] bullying . . .;" "[c]reate a

culture of caring through understanding and support;" and "[d]emonstrate responsible citizenship by maintaining a high standard of conduct, self-control, and moral/ethical behavior." Finally, the letter advised Appellant that "[f]ailure to comply with this letter of reprimand may result in further disciplinary action from the Superintendent. By this reprimand, I am giving you an opportunity to correct your behavior and perform your teaching duties in an acceptable manner." It is undisputed that Appellant did not file a grievance with regard to this letter of reprimand.

A third letter of reprimand, dated January 7, 2008, was also introduced into evidence at the grievance hearing. In this letter, Assistant Superintendent Falin advised Appellant that her behavior during a Science Professional Development Meeting was "inappropriate and unprofessional." According to the letter, Appellant, inter alia, "continually reminded another teacher present at the meeting that he was on a permit to teach science[ ]" even though "[a] teacher's certification is a private issue and only concerns the personnel department." The letter further indicated that "[y]ou also insinuated that [ ] you and/or your school [were] being treated unfairly as materials were being decided upon. The procedures for determining needs had been determined during the first part of the meeting (you arrived 20 minutes

gation into who wrote the note. She explained that

> [Appellant] and the parent of the accused student came in to the Board office. . . . There became a ruckus, I guess you could call it. The parent was real agitated and yelling and screaming at [Appellant]. [Appellant] was very agitated about it also and she was yelling and screaming. So it was kind of a circus atmosphere.

According to Assistant Superintendent Freeman's testimony, she wrote the reprimand letter

> [b]ecause I thought that the incident was serious enough that [Appellant] needed to understand that protocol needed to be followed; that when you have an incident at school, the administration needs to deal with it first. At the time of this altercation or this yelling back and forth, there was no judgment on the part of the administration as to who wrote this bad note in school. [Appellant] had spoken with the parent, contacted this other parent, told her that her daughter was suspended when, in fact,

she hadn't been suspended. The communication had gone from bad to worse, causing a lot of distress with the student and the parent, the assistant principal, and it, you know, following into the Board office level. I just felt like her behavior and demeanor in handling this situation was unprofessional.

> . . . .

> Well, I expected, once I sent her the letter, that she would understand to follow proper procedure, and that her behavior should be in a more professional manner, especially at the Board of Education.

10. Appellant testified during the grievance hearing that Assistant Superintendent Freeman was "confused" about the incident involving the grandparent. Appellant also introduced into evidence a letter she wrote to Ms. Freeman to "clarify" the situation. However, the letter was not made a part of the joint appendix filed with the present appeal. It is clear from the ALJ Decision in this case that Appellant's letter to Ms. Freeman was not considered favorably.

late) and had been agreed upon by all those present."

In the January 7, 2008, letter, Assistant Superintendent Falin reminded Appellant of specific codes of conduct requiring teachers to exhibit professional behavior in, inter alia, communication and to "demonstrate responsible citizenship by maintaining a high standard of conduct, self-control, and moral/ethical behavior." Finally, the letter reminded Appellant that she "represent[s] the McDowell County Board of Education at all county meetings and school functions; therefore your appropriate behavior is expected and must be exhibited." It is undisputed that Appellant did not file a grievance with regard to this letter of reprimand.

In addition to the foregoing letters of reprimand, the Board presented evidence of several teacher observations completed at various times during the course of Appellant's employment with the Board. The portions of the teacher observations introduced at the grievance hearing specifically involved criticism of Appellant's communication and/or interaction with parents and students. For example, teacher observations dated May 16, 2003, and May 30, 2003, noted that, under the section entitled "Communication," Appellant "does not communicate effectively with others with appropriate skills" and, under the section entitled "Professional Work Habits," Appellant "does not interact appropriately with others." With regard to the May 16, 2003, observations, the evaluator, Assistant Principal Cruey, testified that she noted Appellant's deficiencies in communicating effectively because she had received complaints from parents and students about inappropriate comments by Appellant.

Similarly, under the "Communication" section of the teacher observation dated May 22, 2003, the evaluator noted that Appellant "lacks interactive skills." Although Grievant wrote on the May 16, 22, and 30, 2003, teacher observations that she would file a grievance or "rebuttal" with regard thereto, it

does not appear from the record that grievances were ever filed.

In a teacher observation dated January 6, 2004, the evaluator, Katherine Sorah, noted under the "Classroom Climate" and "Professional Work Habits" sections that Appellant "makes inappropriate comments to students," and under "Communication," indicated Appellant "needs to work on the area of maintaining effective communication with parents, students and staff." Ms. Sorah testified at the grievance hearing that she included these comments because there had been quite a few complaints from students that Appellant made inappropriate comments and from parents that Appellant had discussed confidential information about their children out in the community.

In a teacher observation dated May 12, 2004, the evaluator, Ms. Sorah, indicated under "Communication" that Appellant "needs to work on better communication skills between teacher/parent." The evaluator also suggested that Appellant "use sound judgment when faced with difficult students and situations." Ms. Sorah explained at the grievance hearing that the purpose of these comments was to convey to Appellant that "when there is conflict between a student and a teacher or a parent and a teacher that you have to be calm. You have to let the parent express themselves and listen and then solve these issues in a professional manner. We can't be on the defense."

Likewise, an October 25, 2005, teacher observation specifically noted that Appellant should "work on parent/teacher relations." The evaluator, Alvin Cline, who was Appellant's principal at Mount View Middle School, testified that he wrote this comment because conferences between Appellant and parents were often confrontational.

With regard to the teacher observations dated January 6, 2004, May 12, 2004, and October 25, 2004, the evaluators testified that they met with Appellant to discuss their respective evaluations. Appellant did not file grievances with regard to any of these teacher observations.[11]

---

11. In her brief and during oral argument before this Court, Appellant argues that she objected below to the admission of the foregoing evidence of her prior reprimand letters and teacher obser-

vations on the grounds that they were not relevant to her termination and that they effectively (and improperly) expanded the basis for her termination. However, our review of the joint ap-

For her part, Appellant argued that she was terminated in retaliation for the fact that, in April 2003, she reported to the State Board of Education that old standardized tests were being used at her school to aid students in the preparation for future standardized testing, in violation of copyright laws.[12] Ben Barkey, Appellant's union representative who made the report on her behalf, testified that Appellant's allegation of testing irregularities has never been resolved by the State Board of Education. Mr. Barkey further testified that not long after the report was made, Appellant's position (along with many other teacher positions that year) was eliminated as part of a reduction in force. According to Mr. Barkey's testimony, Appellant bid on a position for which she was certified; however, she was not hired. He filed a grievance on her behalf on the ground that she was the most qualified candidate. He specifically testified that he did *not* allege retaliation for Appellant's report to the State Board of Education alleging standardized testing irregularities.[13]

By Decision entered August 19, 2010, the ALJ upheld Appellant's suspension and termination and denied her grievance. Although the ALJ made no finding as to who initiated the physical altercation, it found, inter alia, that Appellant "made physical contact with Ms. C. Bailey to the degree that Ms. Bailey's glasses were knocked off. The contact is a fact. It is the circumstances of the contact that is debated."

The ALJ also found that during Appellant's employment at various schools throughout McDowell County Schools, her difficulties communicating with parents and students occurred repeatedly and with increasing severity. The ALJ further found, however, that Appellant "was unwilling to acknowledge shortcomings in her conduct toward others as reflected in a number of prior

pendix filed by the parties in this appeal (including, but not limited to, the transcript of the Level III grievance hearing), revealed no record of any such objections by Appellant. *See* W.Va. R.App. P. 6(c) (stating, inter alia, that unless otherwise provided, the record on appeal is not automatically transmitted to the Court and that "[a]ll parties to the case are responsible for determining the contents of the appendix, and the petitioner is responsible for preparing and filing the appendix as set forth in Rule 7.")

*Following oral argument, Appellant filed with* this Court "Petitioner's Motion for Leave to Supplement the Record," to which she attached two pleadings she filed prior to the commencement of the Level III hearing. The first pleading, filed with the ALJ on or about March 12, 2009, was Appellant's motion "to provide direction on the scope" of the evidence relating to her employment history in which she also objected to admission of same because this evidence was not included in the Board's charge against her in either the final notice of termination, the recommended decision of the Department of Education's hearing officer, or the notice of suspension. As an aside, we note that, in her motion to supplement the record, Appellant directs this Court to the transcript of an August 14, 2009, hearing before the ALJ in which her pre-hearing motion was apparently argued. We point out, however, that Appellant failed to include this August 14, 2009, hearing transcript in the joint appendix filed with this appeal.

The other pleading, filed with the ALJ on or about September 23, 2009, objected to the following: inclusion in her personnel file of an unspecified grievance Appellant filed in 2003;

the absence from her personnel file of favorable evaluations made by certain named evaluators; and the inclusion in her personnel file of letters from children Appellant never taught. Appellant argued that these letters were written about another teacher.

In response to Appellant's motion to supplement the record on appeal, the Board argued that Appellant failed to show good cause as to why the motion should be granted; that Appellant was provided the reprimand letters and teacher observations when they were written; that she was provided adequate notice that the reprimand letters and teacher observations would be offered into evidence at the grievance hearing because the Board was directed to provide her with same following the August 14, 2009, hearing during which Appellant's objection was argued; and that Appellant failed to make specific objections to the reprimand letters and teacher observations presented by the Board. The Board argues that the September 23, 2009, pleading described above instead sought to preclude the admission of letters from children and evidence of an unspecified 2003 grievance, neither of which was offered into evidence by the Board.

By order entered June 4, 2012, this Court granted Appellant's motion to supplement the record on appeal.

12. Appellant argued retaliation even though, as she points out, there were also numerous positive comments in the teacher observations introduced into evidence by the Board.

13. According to Mr. Barkey, Appellant did not prevail in that grievance.

evaluations and observations." Indeed, not only did Appellant allege that she was terminated in retaliation for reporting standardized testing irregularities in April 2003, but the ALJ acknowledged similar assertions by Appellant with regard to the reprimand letters and the negative comments in the teacher observations.

In assessing the credibility of various witnesses who testified at the hearing, the ALJ clearly questioned the reliability of Appellant's testimony. More specifically, as indicated above, the ALJ emphasized that Appellant's written statement, which was made immediately following the March 6, 2008, altercation, differed significantly from her testimony at the grievance hearing. Furthermore, when presented with a copy of her type-written statement during the hearing, Appellant initially claimed that she did not write it. It was not until Assistant Principal Cruey was asked to authenticate the document that Appellant conceded that she authored it. The ALJ clearly weighed these factors against Appellant in terms of her credibility and the reliability of her testimony.[14]

The ALJ ultimately concluded that the Board proved the charges of insubordination and willful neglect of duty by a preponderance of the evidence and that Appellant failed to prove that her suspension and termination were the result of retaliation or reprisal.

Appellant appealed the ALJ's ruling to the Circuit Court of Kanawha County. By Final Order entered February 8, 2011, the circuit court rejected Appellant's argument that the ALJ should have determined whether Appellant initiated the physical confrontation with Ms. Bailey. The circuit court concluded that the ALJ's failure to reach a specific conclusion in this regard was not arbitrary or capricious nor an abuse of discretion because the ALJ

did conclude that [Appellant] took part in such conduct. It was the participation in the physical altercation that prompted an

investigation by the school board. The ALJ's decision contains very detailed findings of facts on both the physical altercation and the prior reprimands and negative evaluations discovered from the investigation. The record supports these findings as does the evidence provided by the [Board]. The record and the evidence do not support a finding that Petitioner's actions were innocent, and it does not prove the ALJ's finding[s] of fact are clearly wrong. As a result, the ALJ's decision contained the required findings of fact necessary to uphold Petitioner's termination.

The circuit court affirmed the ALJ's denial of Appellant's grievance. This appeal followed.

## II. Standard of Review

■ It is well settled that this Court reviews decisions of the circuit court in grievance board proceedings as follows: " 'When reviewing the appeal of a public employees' grievance, this Court reviews decisions of the circuit court under the same standard as that by which the circuit court reviews the decision of the administrative law judge." Syl. pt. 1, *Martin v. Barbour County Board of Education*, 228 W.Va. 238, 719 S.E.2d 406 (2011).

■ The standard by which the circuit court reviews the decision of the administrative law judge is deferential and plenary. As we held in syllabus point one of *Alderman v. Pocahontas County Bd. of Educ.*, 223 W.Va. 431, 675 S.E.2d 907 (2009),

"[g]rievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of

14. As previously indicated, the ALJ also found the testimony of witness M.B.H. to be unreliable because, inter alia, she did not tell anyone that she observed the altercation in the hallway and

because she testified that the altercation occurred during her seventh period class even though all other evidence established that it occurred in the morning.

law to the facts, which are reviewed de novo." Syllabus point 1, *Cahill v. Mercer County Board of Education,* 208 W.Va. 177, 539 S.E.2d 437 (2000).

■ Moreover, " '[a] final order of the hearing examiner for the West Virginia [Public] Employees Grievance Board, made pursuant to W.Va.Code, [6C–2–1], *et seq.* [ ], and based upon findings of fact, should not be reversed unless clearly wrong.' Syl. pt. 1, *Randolph Cnty. Bd. of Educ. v. Scalia,* 182 W.Va. 289, 387 S.E.2d 524 (1989)." *Martin,* at syl. pt. 3, 228 W.Va. at 239, 719 S.E.2d at 407.

With these standards in mind, we shall review the issues raised in this appeal.

### III. Discussion

As indicated above, following the altercation with Ms. Bailey on March 6, 2008, Appellant was advised that she was being suspended from employment with pay effective immediately "and continuing until the criminal complaint filed in the Magistrate Court of McDowell County is resolved and/or until the McDowell County Board of Education conducts its own investigation to determine whether it should take disciplinary action regardless of the *outcome of the criminal complaint.*" Eventually, by letter dated October 10, 2008, State School Superintendent Paine notified Appellant that her employment was being terminated for the following reasons:

> On March 6, 2008, while employed as a teacher at War Elementary School, you did hit and/or shove the parent/guardian of one of your students in the hallway of the War Annex. This conduct, which occurred in the view of students, lead to you being charged with and subsequently convicted of battery. Further, even apart from your criminal conviction, your actions constitute insubordination, willful neglect of duty, and immorality.

It is Appellant's contention that the foregoing notices of suspension[15] and termi-

nation were predicated on the Board's presumption that Appellant had committed a battery on Ms. Bailey. In the criminal matter, however, the circuit court determined that the prosecution failed to prove beyond a reasonable doubt that Appellant did not act in self-defense. As a result, Appellant argues, because the ALJ was unable to conclude whether Ms. Bailey was "the victim of an unprovoked attack" by Appellant, the Board failed to prove, by a preponderance of the evidence, the basis for her suspension and termination as set forth above.

Appellant further argues that the introduction of evidence of her employment history (i.e., the letters of reprimand and teacher observations) was tantamount to adding charges against her in an effort to justify her termination. It is Appellant's contention that she was not afforded adequate notice of these additional charges, in violation of her due process rights.

Finally, Appellant contends that she was terminated in retaliation or reprisal for her reporting of standardized testing irregularities to the State Board of Education in April 2003.[16]

West Virginia Code 18A–2–8 (2007) sets forth the reasons for which a teacher may be suspended or dismissed. More specifically, West Virginia Code § 18A–2–8(a) provides as follows:

> Notwithstanding any other provisions of law, a board may suspend or dismiss any person in its employment at any time for: Immorality, incompetency, cruelty, insubordination, intemperance, willful neglect of duty, unsatisfactory performance, the conviction of a felony or a guilty plea or a plea of nolo contendere to a felony charge.

■ Indeed, in prior cases, this Court has held that "[t]he authority of a county board of education to dismiss a teacher under W.Va.Code 1931, 18A–2–8, as amended, must be based upon the just causes listed therein

---

**15.** As previously noted, though afforded the opportunity for a hearing, Appellant did not request one with regard to her suspension.

**16.** *As previously discussed, Appellant does not aver that the October 24, 2005, reprimand letter*

from Assistant Superintendent Freeman was written in retaliation for her report; rather, she claims this letter was written because Ms. Freeman was "confused" about a particular incident involving the grandparent of a student.

and must be exercised reasonably, not arbitrarily or capriciously." Syl. Pt. 3, *Beverlin v. Board of Education,* 158 W.Va. 1067, 216 S.E.2d 554 (1975). *See* Syl. Pt. 4, *Maxey v. McDowell Cty. Bd. of Educ.,* 212 W.Va. 668, 575 S.E.2d 278 (2002).

██ This Court has further held that "[t]he dismissal of criminal charges that prompted initial disciplinary action against a public employee does not preclude a public official from administering further disciplinary action, including discharge." Syl. Pt. 2, *Neely v. Mangum,* 183 W.Va. 393, 396 S.E.2d 160 (1990). *See* Syl. Pt. 7, *Giannini v. Firemen's Civil Service Com'n,* 220 W.Va. 59, 61, 640 S.E.2d 122, 124 (2006); Syl. Pt. 3, *Montgomery v. State Police,* 215 W.Va. 511, 600 S.E.2d 223 (2004). This is, in part, because the applicable standard of proof in a grievance proceeding is preponderance of the evidence while the standard of proof in a criminal matter is beyond a reasonable doubt. *See Giannini,* 220 W.Va. at 65, 640 S.E.2d at 128. *See also Id.* at 66, 640 S.E.2d at 129 (" 'There are many reasons, including a higher burden of proof and stricter evidentiary rules, that may affect whether a criminal defendant is convicted.' " (*quoting Montgomery,* 215 W.Va. at 516, 600 S.E.2d at 228)).

██ Thus, in the case *sub judice,* the Board was not precluded from terminating Appellant's employment even though the circuit court concluded that she acted in self defense with respect to the underlying battery charge. The ALJ determined that Appellant "made physical contact with Ms. C. Bailey to the degree that Ms. Bailey's glasses were knocked off" and that although Appellant disputes under what circumstances this contact occurred, "[t]his conduct certainly conflicts with the example of self control and moral behavior which teachers are expected to set for their students."

Furthermore, as discussed above, the ALJ specifically found the testimony of Appellant to be without credibility given the vast differences between her written statement and her live testimony. The ALJ similarly found the testimony of witness M.B.H., while consistent with Appellant's version of events, to be unreliable.

As the circuit court noted, the ALJ made detailed findings of fact and concluded that the Board proved, by a preponderance of the evidence, that Appellant engaged in a physical altercation with Ms. Bailey on school property while students were present and that her conduct constituted insubordination and willful neglect of duty. Giving due deference to the ALJ's findings and credibility determinations, this Court concludes that the ALJ's conclusions in this regard are not clearly wrong. *See Alderman,* at syl. pts. 1 and 3.

██ With regard to Appellant's contention that she was not afforded adequate notice that the Board intended to present matters relating to her employment history, the Board argues that all such evidence was disclosed to Appellant well before the grievance hearing was conducted. Indeed, according to Appellant's own representation in her brief, and as indicated above, following an August 14, 2009, hearing, the ALJ overruled her objections to the introduction of evidence from her personnel file and directed the Board to disclose to her any portion of her employment history it intended to present at the Level III grievance hearing. It is not disputed that the Board disclosed this evidence accordingly. The Board further argues that this evidence was not offered as additional grounds for termination as argued by Appellant; rather, it offered this evidence for the purpose of showing that Appellant was on clear notice that the Board had expectations that her interactions with parents and students be civil and professional. We agree.

The October 24, 2005, reprimand letter, which recounted an incident in which Appellant engaged in a hostile verbal confrontation with the grandparent of a student on Board property, reminded Appellant that it was her professional responsibility to interact appropriately with parents, students and educational personnel. The November 16, 2007, reprimand letter addressed allegations that Appellant harassed students who failed to purchase certain requested materials even though it was a widely-known policy that students not be required to do so. Indeed, according to the testimony of Assistant Su-

perintendent Falin, this letter of reprimand was written after Ms. Falin spoke to Appellant three times about such conduct. The November 16, 2007, letter advised Appellant that "failure to comply ... may result in further disciplinary action from the Superintendent. By this reprimand, I am giving you an opportunity to correct your behavior and perform your teaching duties in an acceptable manner."

Likewise, the January 7, 2008, reprimand letter, involving Appellant's "inappropriate and unprofessional" behavior during a meeting with other science teachers, reminded Appellant of specific codes of conduct requiring teachers to exhibit professional behavior in communication. Moreover, this letter of reprimand, which advised Appellant that she represents the Board at all meetings and school functions and that "appropriate behavior is expected and must be exhibited," was written only two months before Appellant's altercation with Ms. Bailey.

In a similar vein, the teacher observations previously described herein addressed with Appellant her difficulties in communicating and interacting with parents and students throughout the course of her employment with the Board. Given that the stated reason for Appellant's termination obviously involved inappropriate and unprofessional interaction with Ms. Bailey, the reprimand letters and teacher observations relating to similar past behavior were clearly relevant to show that Appellant was on clear notice that the Board expected her conduct as it related to her interactions with parents and students to be civil and professional.

 With regard to Appellant's claim that she was terminated in retaliation or reprisal[17] for her reporting of standardized testing irregularities in 2003, the ALJ found this claim to be without merit. This Court has previously established that which is necessary to make a prima facie case for an action of unlawful reprisal such as retaliatory discharge:

[i]n an action to redress an unlawful retaliatory discharge ... the burden is upon the complainant to prove by a preponderance of the evidence (1) that the complainant engaged in protected activity, (2) that complainant's employer was aware of the protected activities, (3) that complainant was subsequently discharged and (absent other evidence tending to establish a retaliatory motivation) (4) that complainant's discharge followed his or her protected activities within such period of time that the court can infer retaliatory motivation.

Syl. Pt. 4, in part, *Frank's Shoe Store v. West Virginia Human Rights Com'n,* 179 W.Va. 53, 365 S.E.2d 251 (1986). *See West Virginia Dept. of Natural Resources v. Myers,* 191 W.Va. 72, 76, 443 S.E.2d 229, 233 (1994); Syl. Pt. 1, *Brammer v. Human Rights Com'n,* 183 W.Va. 108, 394 S.E.2d 340 (1990).

Assuming *arguendo* that Appellant satisfied the first three requirements necessary to make a prima facie case for retaliatory discharge, this Court finds that she did not satisfy the fourth requirement because she failed to demonstrate that she was terminated within such period of time following her report of standardized testing irregularities to the State Board of Education that retaliatory motive can be inferred. Appellant's report to the State Board of Education occurred in April 2003. Appellant's termination did not occur until five years later. In the interim, Appellant filed a grievance when she was not rehired into a position following a reduction in force; the evidence reveals, however, that she did not allege retaliation as a grounds for that grievance. The evidence further reveals that, in the years following, Appellant failed to file grievances over the reprimand letters and teacher observations which she only now contends were made in retaliation for her 2003 report. We find that Appellant failed to prove, by a preponderance of the evidence, any inference of retaliatory motive and, thus, failed to make a prima facie case of retaliatory discharge.

In summary, we find that the ALJ properly concluded that the Board proved by a

17. West Virginia Code 6C–2–2(*o*) (2008) defines the term "reprisal" as "the retaliation of an employer toward a grievant, witness, representa- tive or any other participant in the grievance procedure either for an alleged injury itself or any lawful attempt to redress it."

preponderance of the evidence the basis for Appellant's termination and further, that Appellant failed to make a prima facie case of retaliatory discharge. Accordingly, the ALJ's denial of Appellant's grievance was not clearly wrong.

### IV. Conclusion

For the reasons set forth above, the final order of the Circuit Court of Kanawha County, entered February 9, 2010, is hereby affirmed.

Affirmed.

Justice WORKMAN is disqualified.