IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January Term 2013

**FILED**

**June 5, 2013**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 12-0287

WEST VIRGINIA DEPARTMENT OF TRANSPORTATION,
DIVISION OF HIGHWAYS,
Petitioner

v.

KENNETH R. LITTEN,
Respondent

Appeal from the Circuit Court of Kanawha County
The Honorable Tod J. Kaufman, Judge
Civil Action No. 11-AA-132

AFFIRMED

Submitted: May 14, 2013
Filed: June 5, 2013

Krista D. Black, Esq.
West Virginia Department of Transportation
Division of Highways, Legal Division
Charleston, West Virginia
Counsel for the Petitioner

Katherine L. Dooley, Esq.
The Dooley Law Firm, P.L.L.C.
Charleston, West Virginia
Counsel for the Respondent

The Opinion of the Court was delivered PER CURIAM.

JUSTICE LOUGHRY dissents and reserves the right to file a dissenting opinion.
JUSTICE WORKMAN did not participate in the consideration or decision of this matter.

1. "When reviewing the appeal of a public employee's grievance, this Court reviews decisions of the circuit court under the same standard as that by which the circuit court reviews the decision of the administrative law judge." Syl. pt. 1, *Martin v. Barbour County Board of Education*, 228 W.Va. 238, 719 S.E.2d 406 (2011).

2. "Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo." Syl. pt. 1, *Cahill v. Mercer County Board of Education*, 208 W.Va. 177, 539 S.E.2d 437 (2000).

**Per Curiam**:

The West Virginia Department of Transportation, Division of Highways ("DOH"), appeals the order of the Circuit Court of Kanawha County which affirmed the decision of the West Virginia Public Employees Grievance Board. Pursuant to the decision of the Board, Kenneth R. Litten ("Litten"), a mechanic, was reinstated to his employment.

Litten's employment with the DOH was terminated for allegedly accessing and attempting to access pornographic websites on August 27, 2010, using a computer owned by the State. According to the State, not only was accessing and attempting to access pornography a violation of State policy, Litten's use of the computer in that regard potentially exposed the State computer network to "viruses, worms and other malware." Litten, emphasizing that the computer was located in a common area for his use and the use of approximately 13 other workers, denied that he was the offending employee. The Grievance Board found in favor of Litten and directed the DOH to reinstate him to his employment with back pay and lost benefits. On January 23, 2012, the circuit court entered an order affirming the decision of the Grievance Board.

Having carefully considered the briefs, the argument of counsel and the appendix-record, this Court is of the opinion that the order of the circuit court should be affirmed.

**I. Factual Background**

2

Litten, hired in November 1999, worked for the DOH as a mechanic in Burlington, West Virginia. The employees at the shop included nine mechanics, one welder, a shop foreman, an office assistant, an equipment supervisor and an assistant to the equipment supervisor. The shop had an employee break room with a State-owned computer the employees shared for work-related use. Although the computer was not assigned to any particular individual, each employee, including the mechanics, had a unique User ID and password. Litten, as well as his co-workers, were trained on the proper use of the State's computer resources.

Shortly after August 27, 2010, the West Virginia Office of Technology discovered that the User ID assigned to Litten had been utilized on the break room computer in connection with "offensive search engine keywords" to access and attempt to access pornographic websites. To confirm that the inappropriate use of the computer was intentional, the Office of Technology examined Litten's User ID computer records for a 24-hour period surrounding offenses committed on August 27, 2010.[1]

---

[1] The authority of the Office of Technology, a part of the West Virginia Department of Administration, is found in *W.Va. Code*, 5A-6-1 [2006], *et seq*. Pursuant to that authority, the Office of Technology, through its Chief Technology Officer, issued a written policy in 2007 entitled Information Security. Section 7.0 of the policy stated in part:

> Under the provisions of West Virginia Code § 5A-6-4a *et seq*., the Chief Technology Officer (CTO) is charged with securing State government information and the data communications infrastructure from unauthorized uses, intrusions, or other security threats. The CTO is granted both the authority and the responsibility to develop information technology policy, promulgate that policy, audit for policy compliance, and require corrective action where compliance is found to be unsatisfactory or absent.

The Information Security policy included the following provisions relevant to this case: (1) employees "must have no expectation of privacy" while using State-provided information

3

The Office of Technology then issued a Network Violation Report to the DOH with regard to the computer activity traced to Litten's User ID. The Report contained (1) a summary of the inappropriate searches which took place on August 27, 2010, (2) the times the searches were conducted and (3) the search terms used. Copies of sexually explicit pictures from the websites accessed were included in the Report. Litten's User ID was utilized three times on August 27, 2010, (after log-in times at 7:16 a.m., 9:53 a.m., and 12:30 p.m.) to search for pornographic images on the computer in the break room.

By letter dated November 29, 2010, the DOH terminated Litten's employment. The letter stated:

> The reason for your dismissal is your direct violation of the West Virginia Office of Technology's policies on Information Security and Network Violation Management, and the Department of Transportation's policy regarding Proper Use of Information Technology.[2] More specifically,
>
> *On August 27, 2010 during the hours of 10:00 a.m. and 2:00 p.m.*, you visited and attempted to visit numerous known pornographic websites. You were denied access to over 400 requested sites or files that are categorized as known pornography or offensive search engine keywords. The Office of Technology was able to trace these activities to the IP address for your computer  .  .  .  and your unique user

resources; (2) employees must never attempt to disable, defeat or circumvent security controls; (3) all passwords are confidential and must not be shared; and (4) each employee "must be accountable for securing his or her computer, and for any actions that can be identified to have originated from it." Finally, the Information Security policy included an appendix which set forth a number of unacceptable uses of State-provided technology. Among the unacceptable uses listed was "any use for viewing, transmitting, receiving, saving, or printing sexually explicit material."

[2] The Department of Transportation's policy regarding Proper Use of Information Technology, like the policy of the Office of Technology, prohibited accessing offensive images, such as obscene, pornographic or sexually explicit material.

identification . . . . Due to the serious nature of this offense, coupled with your prior discipline for misuse of state resources, your dismissal is warranted.[3] (emphasis and footnotes added)

It should be noted that the termination letter did not accuse Litten of violating State policy by failing to secure his User ID and password. The letter only charged inappropriate computer use "during the hours of 10:00 a.m. and 2:00 p.m." on August 27, 2010.

## II. Procedural Background

In December 2010, Litten filed a grievance challenging his termination with the West Virginia Public Employees Grievance Board. In July 2011, a Level Three evidentiary hearing was conducted by the Administrative Law Judge.[4] On September 27, 2011, the Administrative Law Judge granted Litten's grievance and directed that he be reinstated to his employment with back pay and lost benefits, less wages he earned, while dismissed, through alternate employment.

The evidence at the hearing demonstrated that, prior to August 27, 2010, Litten had written his User ID, except for the first letter, on the front of an informational document posted on a bulletin board beside the break room computer. Litten had also written his password on the back of the

---

[3] Litten received a ten-day suspension from the DOH in December 2009 with regard to a missing item of State equipment. The parties herein have not set forth the details of the incident, and the appendix-record does not reveal any direct connection between the suspension and the circumstances in this case. In the present case, the Administrative Law Judge found that Litten "was viewed as a good employee who was always willing to help his co-workers with diagnosing mechanical problems and making repairs."

[4] *See W.Va. Code*, 6C-2-1 [2008], *et seq.*, and *West Virginia Code of State Rules* § 156-1-1 [2008], *et seq.*, concerning procedure in public employee grievance cases.

5

document, although, due to updates, the password as written was not accurate as of August 27, 2010. Nevertheless, the Administrative Law Judge confirmed that, even though Litten had not safeguarded his password, he was not accused of that violation as a basis for his termination. Instead, the Administrative Law Judge emphasized that the termination letter only charged Litten with accessing and attempting to access pornographic websites during the hours of 10:00 a.m. and 2:00 p.m. on August 27, 2010.

Furthermore, Litten's work orders for that day supported Litten's denial that he searched for pornographic websites on the break room computer. Specifically, the Administrative Law Judge determined that Litten was helping a co-worker repair a crane in the early morning hours of August 27, 2010. As to the subsequent times that day, the Administrative Law Judge concluded:

> [The Division's] problem in putting Grievant at the computer when the second inappropriate search was conducted at 10:06 a.m. [after the 9:53 a.m. log-in] on August 27, 2010, is that the work orders show that Grievant was working on a box truck from 9:00 a.m. to 11:30 a.m. Grievant admitted that the starting and ending time shown on the work orders is not exact, as employees round these times to the nearest half hour. However, 10:06 a.m. is not near the starting or ending time shown on the work order.
>
> The same is true of the time in the early afternoon when the inappropriate computer usage was recorded.[5] (footnote added)

The DOH appealed, and on January 23, 2012, the Circuit Court of Kanawha County entered an order affirming the decision of the Administrative Law Judge of the Public Employees Grievance

_____

[5] With regard to the early afternoon, the Administrative Law Judge found that the work order showed that Litten worked from 12:00 p.m. to 3:30 p.m. away from the break room.

6

Board.  Although the circuit court expressed no problem with the August 27, 2010, log-in times of 7:16 a.m., 9:53 a.m., and 12:30 p.m., the circuit court concluded that log-off times, determined by the Administrative Law Judge to be 7:54 a.m., 10:26 a.m. and 1:13 p.m., respectively, constituted error in view of the testimony that the Office of Technology had no mechanism to show when an employee, such as Litten, "actually logged off the PC."   The circuit court's order made clear, however, that the error notwithstanding, the DOH was unable to establish that Litten was the individual who accessed and attempted to access the pornographic websites.

The DOH asks this Court to reverse the adjudications below and uphold the termination of Litten's employment.

### III. Standards of Review

In syllabus point 1 of *Martin v. Barbour County Board of Education*, 228 W.Va. 238, 719 S.E.2d 406 (2011), this Court observed:  "When reviewing the appeal of a public employee's grievance, this Court reviews decisions of the circuit court under the same standard as that by which the circuit court reviews the decision of the administrative law judge."  *Accord* syl. pt. 1, *Armstrong v. Division of Culture and History*, 229 W.Va. 538, 729 S.E.2d 860 (2012).  Thus, pursuant to *W.Va. Code*, 6C-2-5(b) [2007], circuit court review in a grievance case concerns whether the decision of the administrative law judge:

> (1) Is contrary to law or a lawfully adopted rule or written policy of the employer;
> (2) Exceeds the administrative law judge's statutory authority;
> (3) Is the result of fraud or deceit;
> (4) Is clearly wrong in view of the reliable, probative and substantial

7

evidence on the whole record; or

(5) Is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

Of further assistance is syllabus point 1 of *Cahill v. Mercer County Board of Education*, 208 W.Va. 177, 539 S.E.2d 437 (2000), which states:

Grievance rulings involve a combination of both deferential and plenary review. Since a reviewing court is obligated to give deference to factual findings rendered by an administrative law judge, a circuit court is not permitted to substitute its judgment for that of the hearing examiner with regard to factual determinations. Credibility determinations made by an administrative law judge are similarly entitled to deference. Plenary review is conducted as to the conclusions of law and application of law to the facts, which are reviewed de novo.

*Accord* syl. pt. 1, *Shanklin v. Board of Education of the County of Kanawha*, 228 W.Va. 374, 719 S.E.2d 844 (2011). *See* syl. pt. 3, *Watkins v. McDowell County Board of Education*, 229 W.Va. 500, 729 S.E.2d 822 (2012) (A final order of a grievance board examiner based on findings of fact should not be reversed unless clearly wrong.).

## IV. Assignments of Error

The issue in this case is whether the DOH carried its burden of proving the allegations against Litten by a preponderance of the evidence.

The *West Virginia Code of State Rules* § 156-1-3 [2008], states in part: "The grievant bears the burden of proving the grievant's case by a preponderance of the evidence, except in disciplinary matters, where the burden is on the employer to prove that the action taken was justified." Here, the

8

action taken was termination from employment, and the DOH has the burden to prove the grounds therefor by a preponderance of the evidence. *See Watkins supra*, 229 W.Va. at _, 729 S.E.2d at 833 (The applicable standard of proof in a grievance proceeding is preponderance of the evidence.); *Darby v. Kanawha County Board of Education*, 227 W.Va. 525, 530, 711 S.E.2d 595, 600 (2011) (The order of the hearing examiner properly stated that, in disciplinary matters, the employer bears the burden of establishing the charges by a preponderance of the evidence.). *See also Hovermale v. Berkeley Springs Moose Lodge*, 165 W.Va. 689, 697 n. 4, 271 S.E.2d 335, 341 n. 4 (1980) ("Proof by a preponderance of the evidence requires only that a party satisfy the court or jury by sufficient evidence that the existence of a fact is more probable or likely than its nonexistence."); *State ex rel. Smith v. Scott*, 167 W.Va. 231, 233, 280 S.E.2d 811, 813 (1981) ("The term 'preponderance of the evidence' does not refer exclusively to the quantity of testimony but to the quality of that testimony as well.").[6]

The first assignment of error raised by the DOH alleges that the circuit court, in affirming the Administrative Law Judge, incorrectly required the DOH to present direct evidence to prove that Litten was the offending employee, thereby holding the DOH to a higher standard of proof than a preponderance of the evidence standard. In other words, the DOH contends that it was required to

---

[6] Although *W.Va. Code*, 6C-2-4(a)(3) [2008], states that "formal rules of evidence and procedure do not apply" to Level One grievance hearings, neither that statute nor the *West Virginia Code of State Rules* § 156-1-1 [2008], *et seq.*, address whether formal rules of evidence apply to Level Three hearings. However, two predecessor statutes, *W.Va. Code*, 29-6A-6(e) [1998], concerning State employees, and *W.Va. Code*, 18-29-6 [1992], concerning education employees, indicate that formal rules of evidence do <u>not</u> apply to grievance hearings. *See* syl. pt. 3, in part, *University of West Virginia Board of Trustees v. Fox*, 197 W.Va. 91, 475 S.E.2d 91 (1996) (Formal rules of evidence do not apply to grievance procedures under *W.Va. Code*, 18-29-6.).

produce a witness who saw Litten accessing and attempting to access pornographic websites on August 27, 2010. However, neither the Administrative Law Judge nor the circuit court required the DOH to present such direct evidence.

The contention of the DOH is not sustainable because the Administrative Law Judge, quite properly, based the decision on circumstantial evidence. The Level Three evidentiary hearing lasted two days, following which the Administrative Law Judge issued a lengthy decision containing findings of fact and conclusions of law. The decision stated that the DOH had not proven "that it was more likely than not" that Litten accessed and attempted to access pornographic websites on August 27, 2010, during the hours of 10:00 a.m. and 2:00 p.m.

The evidence of record demonstrates that the computer was used by anyone at the Burlington shop who happened to be in the break room and that someone else could have conducted the searches with Litten's User ID and password which were on the bulletin board. Litten's User ID and password on the bulletin board on August 27, 2010, were substantially correct. Except for the first letter, "A," the User ID was correct. The password was also correct, except that the password's last number, as written, was "13." However, the paper on the bulletin board revealed that Litten always updated his password by changing the last number thereof in a consecutive manner, *i.e.*, "9," "10," "11," "12" and "13." By the time Litten was dismissed, the number was "25." The import of that evidence is that it would not have been difficult for another individual to have identified and utilized Litten's User ID and password.

10

More significant was the sharing of User IDs and passwords at the Burlington shop. As stated above, the termination letter did not discipline Litten for failing to secure his User ID and password. Nor were other employees so disciplined. As found by the Administrative Law Judge, the DOH, in the summer of 2010, hired five summer workers in the Burlington area but did not obtain computer IDs for them. The decision was made to allow the five summer workers to use the IDs assigned to five full-time employees who did not ordinarily use the computer. Passwords were then created by the summer workers. Although the DOH later considered such misuse of IDs to be a violation of State policy on computer security, no discipline was ordered. In another instance, the employees at the Burlington shop were given the task, in November 2010, of using the computer to enter information on a questionnaire regarding their job duties and responsibilities. Many of the employees, uncomfortable with computer technology, gave their User ID and password to the office secretary so that she could complete the questionnaire for them. None of the employees were disciplined for violating State policy on computer security.

Although the DOH states that those examples of User ID and password sharing were job related, and that the November 2010 incident occurred after the inappropriate searches allegedly committed by Litten, the evidence is that User ID and password security was not strictly observed at the Burlington shop.[7]

---

[7] With regard to the summer worker incident, the Director of Human Resources of the Department of Transportation testified that he was told by an employee of the DOH that "they wanted to have access for these summer employees to perform data entry functions, and they didn't want to go through the trouble of getting them through the Office of Technology." The Director then testified that he replied to the employee as follows: "I told her that I recognized that that was for a legitimate reason, but that it still violated the Office of Technology's policy on the use of identification numbers and passwords. And that she should not do that."

11

Ultimately, the issues surrounding the presence of Litten's User ID and password on the bulletin board, and whether the work orders evidenced a lack of opportunity to conduct the inappropriate searches, constituted factual conflicts which were resolved by the Administrative Law Judge. The record supports the findings of the Administrative Law Judge that Litten was not in the break room but engaged in repair work on August 27, 2010, during the times he allegedly made the inappropriate searches. Applying the standard of review expressed in *W.Va. Code*, 6C-2-5(b) [2007], those findings are not clearly wrong "in view of the reliable, probative and substantial evidence on the whole record." Moreover, the Administrative Law Judge resolved the questions of fact by way of circumstantial evidence. The DOH was not required to present direct evidence to prove that Litten was the offending employee.

Finally, the DOH contends that the Administrative Law Judge committed an abuse of discretion in excluding evidence that Litten had accessed pornographic websites at the work site on other days. During the Level Three hearing, the Administrative Law Judge stated that the DOH was limited to the accusations set forth in the termination letter, *i.e.*, that Litten conducted inappropriate searches on August 27, 2010, during the hours of 10:00 a.m. and 2:00 p.m. As a result, evidence of inappropriate searches on other days was excluded on grounds of relevancy. The Administrative Law Judge also excluded the evidence because of the difficulty of rebutting the evidence in the absence of specific dates during which those other alleged searches took place.

Asserting error, the DOH maintains that evidence of accessing and attempting to access

12

pornographic websites on other days would have revealed a pattern of activity by Litten and, thus, should have been admitted at the Level Three hearing on the issue of the identity of the offending employee. Litten, however, points out that allegations of computer misuse on days other than August 27, 2010, were never cited by the DOH as a basis for his termination. Moreover, Litten insists that the Administrative Law Judge, in fact, heard and considered evidence of inappropriate searches on other days, the exclusion notwithstanding.

A review of the Level Three transcript demonstrates that the Administrative Law Judge allowed co-workers to testify that they had seen Litten accessing pornographic websites on other occasions and that Litten had said that he could circumvent the State's computer security controls. As the DOH acknowledges, the evidence of inappropriate searches on other days was admitted by the Administrative Law Judge on the issue of whether, by disciplining Litten, the DOH had treated him differently from other employees.

Upholding the decision of the Administrative Law Judge to reinstate Litten to his employment, the circuit court stated:

> In reviewing whether the record supports the ALJ's decision, it is important to keep in mind that the reason for terminating [Litten] was that he was allegedly accessing or attempting to access pornographic materials on a specific date, August 27, 2010, in the break room of District 5 Burlington Headquarters. * * * [T]he record reflects that the ALJ heard and carefully considered all of the evidence before it, including the testimony of [DOH] witnesses that had previously seen [Litten] on pornographic websites[.]

Although ruled admissible for a limited purpose, the evidence of inappropriate searches on

13

other days was heard by the Administrative Law Judge and was included in the record subsequently reviewed by the circuit court. To the extent additional evidence of that nature was excluded during the Level Three hearing, such evidence was cumulative, and the Administrative Law Judge disallowed the evidence under the exercise of sound discretion. Upon the whole, this assignment does not rise to the level of reversible error.

## V. Conclusion

Upon review, this Court is of the opinion that the result below should not be disturbed. The determinations of the Administrative Law Judge were not clearly wrong. Accordingly, the January 23, 2012, order of the Circuit Court of Kanawha County, which affirmed the decision of the Administrative Law Judge of the Public Employees Grievance Board, is affirmed.

Affirmed.