640 S.E.2d 122

**Michael GIANNINI, Plaintiff Below, Appellee,**

v.

**THE FIREMEN'S CIVIL SERVICE COMMISSION OF THE CITY OF HUNTINGTON, and David A. Felinton, Mayor of the City of Huntington, Defendants Below, Appellants.**

No. 33074.

Supreme Court of Appeals of West Virginia.

Submitted: Oct. 3, 2006.

Decided: Nov. 16, 2006.

Scott McClure, Christopher Dean, Huntington, for the Appellants.

R. Matthew Vital, Vital & Vital, L.C., Huntington, for the Appellee.

ALBRIGHT, Justice.

This is an appeal by the City of Huntington (hereinafter "City") from an order of the Circuit Court of Cabell County reversing a decision of the Firemen's Civil Service Commission (hereinafter "Commission") which upheld the City's termination of firefighter Michael Giannini (hereinafter "Appellee") based upon his possession of cocaine. The City seeks reversal of the circuit court's order and reinstatement of the Commission's decision permitting the City to terminate the Appellee's employment. Upon thorough review of the briefs, record, arguments of counsel, and applicable precedent, this Court reverses the decision of the circuit court and reinstates the decision of the Firemen's Civil Service Commission.

## I. Factual and Procedural History

On April 10, 2004, the Appellee was arrested for possession of crack cocaine. According to testimony of Officer Levi Livingston of the City of Huntington Police Department, Officer Livingston observed the Appellee exiting a known crack house residence on Lincoln Avenue in Huntington, West Virginia, at approximately 4:00 a.m. on April 10, 2004. The officer thereafter pulled the Appellee's vehicle over on a traffic violation, and the Appellee consented to a search of his vehicle. Officer Livingston found five pieces of a tan chunky substance which field tested positive for crack cocaine. No laboratory testing was conducted on the substance.

On April 14, 2004, the Appellee's employment with the City of Huntington Fire Department was suspended. The City contends that the Appellee's possession of cocaine violated Paragraph Two of the City of Huntington Fire Department General Rules and Regulations. That paragraph provides that "personnel shall be governed by the ordinary rules of good behavior observed by self-respecting, law-abiding citizens and shall conduct themselves in such a manner as will bring no reproach or reflection upon the Department, the company or themselves."

By decision dated July 14, 2004, the Firemen's Hearing Board concluded that the Appellee should be reinstated with back pay.

Testimony elicited during the Board hearing indicated that the Appellee had been an exemplary firefighter, had received a commendation of valor, and had no prior disciplinary action against him while working as a firefighter. Chief Greg Fuller testified that the Appellee was not under the influence of controlled substances while on the job and that two other firefighters had not been terminated after being found guilty of misdemeanor DUI offenses. Officer Livingston did not testify at the Board hearing.

Upon appeal by the City, a hearing was held before the Firemen's Civil Service Commission on August 26, 2004. Testimony again included evidence of the Appellee's exemplary record of service. Officer Livingston testified regarding the Appellee's departure from the crack house, the traffic stop, the Appellee's consent to search his vehicle, and the removal of five pieces of a substance which field tested positive for crack cocaine. Testimony was introduced regarding the discussion between Officer Livingston and the Appellee which ensued during the April 10, 2004, arrest. Officer Livingston testified that the Appellee had stated as follows: "He [the Appellee] just stated that, you know, this was probably the best thing for him to get himself straightened up, get his life straightened up." During the questioning of Officer Livingston at the hearing, he was thereafter asked, "Did he [the Appellee] admit to you that he had used either crack or some cocaine-based derivative drug before?" Officer Livingston answered, "Yes, he has."

The Commission issued a November 19, 2004, decision reversing the Board and finding that the Appellee had violated the General Rules and Regulations of the Fire Department. The Commission further found that the City properly suspended the Appellee's employment pending termination. On November 22, 2004, the Appellee's employment was terminated. On February 9, 2005, a criminal charge against the Appellee arising from the arrest for possession of a controlled substance was dismissed with prejudice.

On August 26, 2005, the circuit court reversed the Commission's decision, finding that the City lacked just cause to terminate the Appellee's employment. The City now appeals to this Court.

## II. Standard of Review

■ In the syllabus of *Billings v. Civil Service Commission*, 154 W.Va. 688, 178 S.E.2d 801 (1971), this Court stated that "[a] final order of the Civil Service Commission based upon a finding of fact will not be reversed by this Court upon appeal unless it is clearly wrong." This Court has also explained that this standard of review is applicable to a circuit court's review of an administrative agency such as the Firemen's Civil Service Commission. Syllabus point one of *Appeal of Prezkop*, 154 W.Va. 759, 179 S.E.2d 331 (1971), stated as follows: "A final order of a police civil service commission based upon a finding of fact will not be reversed by a circuit court upon appeal unless it is clearly wrong or is based upon a mistake of law."

■ In *In re Queen*, 196 W.Va. 442, 473 S.E.2d 483 (1996), this Court further explained this standard of review in an appeal involving a decision of the Correctional Officers' Civil Service Commission. In *Queen*, we stated that "[o]ur review of the circuit court's decision made in view of the Commission's action is generally *de novo*. Thus, we review the Commission's adjudicative decision from the same position as the circuit court." 196 W.Va. at 446, 473 S.E.2d at 487. In syllabus point one of *Queen*, this Court stated:

An adjudicative decision of the Correctional Officers' Civil Service Commission should not be overturned by an appellate court unless it was clearly erroneous, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Review under this standard is narrow and the reviewing court looks to the Civil Service Commission's action to determine whether the record reveals that a substantial and rational basis exists for its decision.

In syllabus point two of *Queen*, this Court continued as follows:

An appellate court may reverse a decision of the Correctional Officers' Civil Service Commission as clearly wrong or arbi-

trary or capricious only if the Commission used a misapplication of the law, entirely failed to consider an important aspect of the problem, offered an explanation that ran counter to the evidence before the Commission, or offered one that was so implausible that it could not be ascribed to a difference in view or the product of Commission expertise.

See also Collins v. City of Bridgeport, 206 W.Va. 467, 472, 525 S.E.2d 658, 663 (1999). Utilizing these standards for our review, we address the issues presently before this Court.

### III. Discussion

■ West Virginia Code § 8–15–25 (1996) (Repl.Vol.2003) provides in pertinent part that "[n]o member of any paid fire department subject to the civil service provisions of this article shall be removed, discharged, suspended or reduced in rank or pay except for just cause...." In Johnson v. City of Welch, 182 W.Va. 410, 388 S.E.2d 284 (1989), this Court defined just cause as follows:

Just cause has been defined as a substantial cause "which specially relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interest of the public. An officer should not be removed from office for matters which are trivial, inconsequential, or hypothetical, or for mere technical violations of statute or official duty without wrongful intention." 67 C.J.S. Officers § 120b (1936). See also City of Logan v. Dingess, 161 W.Va. 377, 381, 242 S.E.2d 473, 475 (1978); Thurmond v. Steele, 159 W.Va. 630, 225 S.E.2d 210 (1976); Guine v. Civil Service Commission, 149 W.Va. 461, 141 S.E.2d 364 (1965).

182 W.Va. at 413, 388 S.E.2d at 287; see also McDonald v. Young, 173 W.Va. 168, 313 S.E.2d 445 (1984); Kendrick v. Johnson, 167 W.Va. 269, 279 S.E.2d 646 (1981). This clarification of the expression "just cause" is very similar to the explanation provided in syllabus point one of West Virginia Department of Corrections v. Lemasters, 173 W.Va. 159, 313 S.E.2d 436 (1984), setting forth the standard for judging "good cause" for dismissal under the state civil service system:

"W.Va.Code 29–6–15 [1977], requires that dismissal of a civil service employee be for good cause, which means misconduct of a substantial nature directly affecting the rights and interests of the public, rather than upon trivial or inconsequential matters, or mere technical violations of statute or official duty without a wrongful intention." Syl. 1, Oakes v. West Virginia Department of Finance and Administration, 164 W.Va. 384, 264 S.E.2d 151 (1980).

Pursuant to these established definitions of just cause, dismissal is appropriate where the alleged misconduct constitutes a substantial violation directly affecting the rights and interests of the public. The burden of proving such just cause is upon the City, pursuant to this Court's statements in Mangum v. Lambert, 183 W.Va. 184, 394 S.E.2d 879 (1990), wherein the burden of proving just cause for a deputy's dismissal was held to be upon the sheriff who took such action. 183 W.Va. at 188, 394 S.E.2d at 883. Thus, the salient issue for this Court's determination is whether the Appellee's possession of a substance field tested as cocaine is just cause for termination of the Appellee's employment.

Providing due deference to the Commission's findings, we note that the Commission determined that just cause existed, based upon the Appellee's violation of the "General Rules and Regulations of the Fire Department ... by conducting himself in such a manner as to bring reproach and negative reflection upon the Department. [The Appellee] further failed to observe the ordinary rules of good behavior observed by self-respecting, law-abiding citizens." Pursuant to the applicable standards of review, the Commission's order should not have been reversed unless it was clearly wrong, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

The circuit court reversed the Commission's decision and held that just cause did not exist for the City's chosen disciplinary action against the Appellee. The circuit court explained in its order that the City did not prove that the substance found in the Appellee's vehicle was actually crack cocaine.

The circuit court also explained that the Appellee's "termination based solely on an arrest for possession of a controlled substance is inconsistent with past disciplinary actions ... wherein other firefighters were not terminated when not only arrested for, but found guilty of, misdemeanor DUI."

### A. Possession of Controlled Substance as Just Cause

■ In reversing the Commission and concluding that the City lacked just cause to terminate the Appellee's employment, the circuit court relied upon the reasoning of the Court of Appeals of Minnesota in *Recommendation for Discharge of Kelvie*, 384 N.W.2d 901 (Minn.App.1986). In that case, firefighter John Kelvie had been arrested and charged with three misdemeanor counts of possession of marijuana, injection equipment, and drugs not in an original container. In finding that no just cause existed for the termination of Mr. Kelvie's employment as a firefighter, the court analyzed the rules of the Minneapolis Civil Service Commission, providing that incompetence, insubordination, disgraceful conduct, or other justifiable causes shall constitute sufficient cause for removal or discharge. 384 N.W.2d at 903.

The court found no relationship between Mr. Kelvie's possession of a small quantity of marijuana and his job performance. 384 N.W.2d at 904. The court emphasized that the issue of whether the Commission had just cause to discharge Mr. Kelvie was a question of fact and that the Commission's findings were supported by the record. *Id.* Thus, the court did not reverse the findings of the Commission. Further, the court observed that the administrative law judge had found that " 'the main reason John Kelvie was discharged was because of his failure to respond to the questioning ... on Fifth Amendment grounds.' " *Id.* at 905.

In addressing the issues surrounding just cause for termination in the present case, the circuit court order did not include an analysis of a Court of Appeals of Minnesota case decided subsequent to the *Kelvie* decision. In *City of Minneapolis v. Moe*, 450 N.W.2d 367, 370 (Minn.App.1990), the court addressed the *Kelvie* decision and noted that the decision to discharge in Mr. Kelvie "was

principally based upon the firefighter's assertion of his Fifth Amendment rights." 450 N.W.2d at 370. The *Moe* court stated that the "*Kelvie* decision is therefore distinguishable on that basis." *Id.* In evaluating the *Moe* factual circumstances, the Minnesota court found that the police officer's felonious possession of cocaine constituted "misconduct striking at the very essence of law enforcement." *Id.* The court explained that such "*felonious misconduct* is inconsistent with the public trust" and continued as follows:

> The image of integrity and trust is essential to the performance of a police officer's duties. There must be public confidence in law enforcement, and to ignore *felonious possession* of cocaine by a police officer could only serve to undermine public confidence in that office.
>
> This is a time in our society when the scourge of cocaine is running rampant in many parts of our country. We cannot be blind to society's concern about the adverse influence of cocaine in our midst.

*Id.* Significantly, the *Moe* court specified that "[f]elonious possession of cocaine, a violation of the law, must be distinguished from possession or use of alcohol, which is not illegal." 450 N.W.2d at 371. We find this comment instructive and relevant to the tasks before us.

■ As this Court explained in *State ex rel. Ashley v. Civil Service Commission*, 183 W.Va. 364, 395 S.E.2d 787 (1990), "circumstances which have been considered just cause [for dismissal] are involvement in activity which casts aspersions or doubt on a law enforcement officer's honesty and integrity and which directly affects the public's rights and interests." 183 W.Va. at 368, 395 S.E.2d at 791. *See also McMillian v. Ashley*, 193 W.Va. 269, 273, 455 S.E.2d 921, 925 (1995). In the case sub judice, this Court holds that a firefighter's possession of cocaine or crack cocaine constitutes misconduct of a substantial nature specifically related to and affecting the ability to perform tasks inherent in the employment and directly affecting the rights and interests of the public. A firefighter's job is characterized by his or her responsibility to the public, and the health

and mental acuity of public safety personnel are of utmost significance.

### B. Consistency of Disciplinary Action

■ The Appellee argues that his dismissal is inconsistent with prior disciplinary action chosen by the City. He contends that he was treated unfairly and was disciplined more harshly than other employees of the City. Specifically, he references two other firemen found guilty of DUI and not terminated. In analyzing this assertion, this Court must acknowledge that the imposition of discipline is based upon a subjective determination with respect to a specific set of factual circumstances, unique and distinct from all other occasions of misconduct. The fact that the form of discipline imposed upon individuals committing a DUI offense was less severe than that imposed upon the Appellee is not cause for reversal of the Commission's decision in this case. As the City emphasizes, in comparing the Appellee to the DUI offenders, two distinctly different violations exist; one involves abuse of a legal substance and one involves acquisition and possession of an illegal substance. In response to a similar uniformity of discipline argument, the Court of Appeals of Indiana recognized as follows in *General Motors Corporation v. Review Board of Indiana Department of Workforce Development*, 671 N.E.2d 493 (Ind.App.1996):

> Treating offenders who violate its policy by using or possessing illegal drugs differently from those offenders who violate the policy by selling illegal drugs does not mean that GM does not uniformly enforce its drug policy rules. The two classes of offenders are different, present different risks, and are treated differently under our criminal statutes.

671 N.E.2d at 498 (footnote omitted); *see also Everett v. Board of Education*, 334 N.W.2d 320, 321 (Iowa App.1983) (holding that the concept of "just cause" is a flexible one; each case depends on its own circumstances). Further, as referenced above, the *Moe* court succinctly observed that possession of cocaine is properly distinguished from possession or use of alcohol. *Moe*, 450 N.W.2d at 371.

### C. Absence of Laboratory Testing and Dismissal of Criminal Charge

■ The Appellee also argues that the absence of laboratory testing of the substance and the dismissal of the criminal charge should impact the administrative decision in this matter. However, this case arises from an administrative proceeding, rather than a criminal prosecution. Therefore, the applicable standard of proof is not the criminal standard of beyond a reasonable doubt. The standard of proof in the present case is preponderance of the evidence.

The Commission's order clearly addresses the issue of the identification of the substance and concludes that the substance was indeed cocaine. To substantiate this finding, the Commission had before it testimony specifying the trustworthiness of the field testing as indicating that the substance was cocaine. Officer Livingston testified that his prior years of experience had instructed him that the field testing is a very accurate method of determining the identity of the substance. Testimony was also presented from the arresting officer indicating that the Appellee admitted having a drug problem. Based upon all evidence of record, we find that the Commission's order is founded upon credible evidence and is not clearly wrong.

■ In similar vein, we find that the dismissal of the criminal charge against the Appellee does not affect the propriety of the City's discipline against him. In syllabus point two of *Neely v. Mangum*, 183 W.Va. 393, 396 S.E.2d 160 (1990), this Court explained as follows: "The dismissal of criminal charges that prompted initial disciplinary action against a public employee does not preclude a public official from administering further disciplinary action, including discharge." This Court recently employed the reasoning of the *Neely* case in *Montgomery v. State Police*, 215 W.Va. 511, 600 S.E.2d 223 (2004). In *Montgomery*, a police criminalist sought judicial review of an administrative decision upholding his discharge from the state police. 215 W.Va. at 513, 600 S.E.2d at 225. The criminalist contended that he should not have been discharged in an administrative pro-

**66**

ceeding since he was acquitted of the criminal charges.

In analyzing the contentions raised in *Montgomery,* this Court explained as follows:

Just as the continued employment of an individual charged with wrongdoing in *Mangum* was determined to be a valid consideration notwithstanding the dismissal of criminal charges, the employment status of Appellant was analogously subject to this kind of appropriate scrutiny. Like the sheriff's office for whom Mrs. Neely was employed, the State Police has a legitimate interest in limiting employment to individuals who can uphold a high standard of conduct—a standard that clearly requires that employees report to work in a sober state and refrain from engaging in criminal conduct, on or off the job.

*Id.* at 515, 600 S.E.2d at 227. "There are many reasons, including a higher burden of proof and stricter evidentiary rules, that may affect whether a criminal defendant is convicted. For example, the heightened level of proof required in a criminal DUI proceeding accounts for many cases in which administrative action is taken against an individual without an accompanying criminal conviction." *Id.* at 516, 600 S.E.2d at 228 (footnote omitted); *see also Jordan v. Roberts,* 161 W.Va. 750, 757–58, 246 S.E.2d 259, 263 (1978) (discussing differences between administrative and criminal DUI proceedings).

### IV. Conclusion

Upon thorough review of this matter, this Court concludes that the evidence presented to the Commission was sufficient to support its ultimate holding. The Commission's findings were not clearly wrong, based upon mistake of law, arbitrary, capricious, an abuse of discretion, or otherwise contrary to law. Consequently, we find that the circuit court improperly reversed the decision of the Commission. The order of the Circuit Court of Cabell County is reversed. We direct that the order of the Commission be reinstated.

Reversed.