# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**

**December 27, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**NICHOLAS GRALEY,**
**Respondent Below, Petitioner**

**vs.) No. 22-ICA-267**        (Cir. Ct. Kanawha Cnty. Case No. 22-AA-30)

**CITY OF SOUTH CHARLESTON,**
**WEST VIRGINIA,**
**Petitioner Below, Respondent**


## MEMORANDUM DECISION

Petitioner Nicholas Graley appeals the Circuit Court of Kanawha County's October 27, 2022, order. In that order, the circuit court reversed the order of the South Charleston Fire Civil Service Commission ("Commission") and concluded that the termination of Mr. Graley should be affirmed. Respondent City of South Charleston, West Virginia, ("City") filed a response in support of the circuit court's order.[1] Mr. Graley filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Graley was a firefighter for the City of South Charleston Fire Department ("Fire Department") from July 20, 2012, until his termination sometime in late May of 2020. During his employment, he rose to the rank of lieutenant and served as acting captain from time to time.

On May 30, 2019, Mr. Graley was involved in a situation that was described by the investigating police officer as a wanton endangerment incident. According to the officer's narrative, Mr. Graley was drinking at an Applebee's restaurant in South Charleston with friends. The boyfriend of one of Mr. Graley's friends arrived and an argument ensued. The incident culminated in Mr. Graley following the friend and boyfriend on their way to the boyfriend's home, despite being asked by his friend to stop following them, and Mr. Graley

---

[1] Mr. Graley is represented by Mark McMillian, Esq. The City of South Charleston is represented by W. Michael Moore, Esq., and Karen E. Klein, Esq.

discharging his firearm multiple times while driving. The police contacted Mr. Graley, who denied discharging his firearm. However, on June 6, 2019, Mr. Graley and his attorney met with police again. At that time, Mr. Graley admitted to discharging his firearm during the May 30, 2019, incident. On June 1, 2019, South Charleston Fire Chief Virgil White ("Chief White") received a call from Mr. Graley in which Mr. Graley stated that he needed to come by Chief White's office to discuss something. A meeting was held that day wherein Mr. Graley explained the incident as a simple verbal altercation after which the involved parties went their separate ways. He did not mention that he discharged his firearm in public.

On January 30, 2020, Mr. Graley was arrested for domestic assault against Caitlan Wilson, the mother of his child. According to the investigating officer's narrative, the South Charleston Police Department responded to a call from Ms. Wilson wherein she stated that a male had a gun and was telling her to hang up or he would shoot her. Ms. Wilson's mother, who was also at the home when police arrived, told police that when she attempted to call 911, Mr. Graley told her to hang up or he would give the police a reason to show up, all while holding his AR rifle. At the hearing before the Commission, one of the officers who responded on scene testified that upon arriving, he detected the odor of alcohol emanating from Mr. Graley's person and Mr. Graley had red, glassy eyes and slurred speech. The officer testified that Ms. Wilson and the two children who were present were crying and hysterical. In Ms. Wilson's written statement to police, she stated:

> Nick Graley showed up to talk after calling and said if I didn't answer he was kicking in [the] door and if I called [the] cops he would leave in [a] body bag or cuffs. I let him in but called mom before he showed up scared. He took my phone from me physically and when my mom called he wouldn't let me talk to her. She Jennifer Wilson showed up [and] he got in her face cussing and yelling at her. He calmed down but went back and forth getting angry. After my mom told him enough was enough he needed to leave he got angry again throwing a picture frame into the wall. We were both terrified[,] she told him that was it she was calling [the] cops he got back in her face telling her to call them he would give them a reason to be here. He then went downstairs to his safe and got a gun. We all went back into a bedroom with the kids and shut [the] door. He came in with a gun telling my mom to hang up. He left the room went downstairs put the gun back I assume. He came back in the room and told my mom and I "Fxxx you" and went to leave but a cop pulled up before he could get away. I honestly don't know what he will do to me. I was terrified he would shoot me or himself in front of the kids. Or even [what] he would do to cops. He told me he would shoot everyone that showed up. I don't know what he will do but I fear for myself and my kids.

Mr. Graley was arrested and released on a personal recognizance bond with the condition that he have no contact with Ms. Wilson. Mr. Graley met with Chief White to discuss this incident on February 5, 2020. At the meeting, Mr. Graley indicated that the situation was being blown out of proportion by Ms. Wilson's family members and he denied that he had a gun during the incident. Chief White communicated that Mr. Graley's behavior seemed to indicate a pattern that would not be tolerated. The Fire Department set up anger management counseling for Mr. Graley, who attended only a few sessions before stopping.

On May 9, 2020, Mr. Graley was again arrested for domestic assault against Ms. Wilson. According to the officer narrative, Mr. Graley came to Ms. Wilson's residence to return his child's iPad. Upon his arrival, Ms. Wilson could tell that Mr. Graley had been drinking. She made a comment about Mr. Graley tracking mud into her home with his boots. This caused Mr. Graley to become agitated. He stomped his boots, smashed a glass picture frame, and then raised his fist as if he was going to hit Ms. Wilson. Ms. Wilson called her mother who then called Ms. Wilson's brother-in-law, John Morrison, to go and check on Ms. Wilson. When Mr. Morrison arrived, he found Ms. Wilson and Mr. Graley arguing in the living room in front of two children. Mr. Morrison told Mr. Graley that he needed to leave. Mr. Graley then grabbed two steak knives from the kitchen and held them up to Mr. Morrison and told him that he was going to stab him. Mr. Morrison acted like he was going to leave which caused Mr. Graley to put the knives down. Mr. Morrison then tackled Mr. Graley and the two began to fight until the police arrived. According to the testimony of Mr. Morrison, during the incident, Mr. Graley punched a hole in the drywall of the home. Mr. Graley was arrested and taken to the hospital to receive stitches before being transported to jail. While in jail, Mr. Graley contacted his father to get his father to arrange a shift change for him at the Fire Department. On May 11, 2020, Mr. Graley met with Chief White to discuss the incident. Mr. Graley did not admit any wrongdoing and described wielding the knives as self-defense.

On May 11, 2020, an official investigation was opened by the Fire Department into Mr. Graley. On May 14, 2020, Chief White issued a report that summarized the findings of the investigation. The report found that Mr. Graley violated the following:

City Code Article 167.19 (e) Willful abuse or deliberate damage to City property or property of another employee or the property of a City resident;

(n) Disrespectful behavior directed toward fellow employees, supervisors or the residents at large;

(t) Refusal to obey instructions, or insubordination;

3

Fire Department General
Rules and Regulations
Section IV                    (m) Promptly notify their immediate supervisor of
                              all matters coming to their attention affecting the
                              interest and welfare of the department.

Chief White concluded his report by stating:

This has a negative impact and can create a public perception of distrust with
the core values of the City of South Charleston and the South Charleston Fire
Department. There has been a pattern of erratic and dangerous behavior (3
incidents), conducted in a short span of time resulting in law enforcement
intervention. Two (2) of these incidents have resulted in an arrest.

It is concluded that this type of behavior will not be condoned. Whether a
firefighter is on duty or off duty their actions are held accountable.

Chief White then attempted to meet with Mr. Graley to discuss the results of the
investigation. It appears from the testimony before the Commission that Chief White
initially determined that Mr. Graley would be reprimanded but had not decided if Mr.
Graley would be terminated. A time was set for the meeting, but Mr. Graley did not show.
When contacted by Chief White, Mr. Graley indicated that he was waiting to hear back
from his lawyer before he attended the hearing. Mr. Graley was also concerned he would
be arrested at a meeting because he was wanted by law enforcement for violating the
conditions of his bond. Mr. Graley also communicated to Chief White that he planned to
turn himself in but not until the following Monday because he did not want to ruin his
weekend. Mr. Graley eventually turned himself in on May 16, 2020.

In an undated letter, Chief White informed Mr. Graley that his employment was
terminated. In addition to the violations listed in the report, the termination letter also
included a violation of the City Code concerning city employees who are arrested, indicted,
or convicted of crimes outside of the workplace. The letter stated that because exigent
circumstances existed, the termination would be effective immediately.

Mr. Graley filed a writ of mandamus in circuit court challenging the immediate
termination due to exigent circumstances. By order dated November 20, 2020, the circuit
court denied the petition and concluded that Mr. Graley was properly terminated
immediately due to exigent circumstances. The circuit court noted that it was reasonable
to believe that an individual with obvious anger management issues could have difficulty
performing his job as a firefighter in a dutiful manner if an on-the-job circumstance were
to trigger his anger.

On December 29, 2020, a hearing was held before an internal Fire Department hearing board. By order entered February 8, 2021, the hearing board affirmed Mr. Graley's termination. Mr. Graley then appealed to the Commission.

On December 8, 2021, the Commission held a de novo hearing. At the hearing, two police officers involved in the incidents testified, as did Mr. Morrison, Chief White, and Ms. Wilson. Mr. Graley did not testify. Ms. Wilson testified that at the time of the hearing before the Commission, her relationship with Mr. Graley was the best it had ever been.[2] Ms. Wilson went on to essentially walk back everything she had told to police following the January and May 2020 incidents. She testified, among other things, that Mr. Graley had never raised his hand at her or threatened to shoot anyone; that no one was ever in danger of serious injury; and regarding the May 2020 incident, that she never invited Mr. Morrison into her home or asked him to remove Mr. Graley and therefore Mr. Morrison was essentially acting as a vigilante. On cross-examination, Ms. Wilson refused to read her prior statement to police on the record but answered questions from the City's attorney about the contents of her prior statement. When one of the commissioners questioned the conflict between her statements to police and her testimony before the Commission, Ms. Wilson and Mr. Graley's attorney attempted to reconcile her statements by saying that she was not recanting her prior statements but was simply trying to say that, in hindsight, Mr. Graley was not objectively a danger. Ms. Wilson eventually stated that she was "absolutely not" recanting her statements to police.

On January 24, 2022, the Commission issued its initial order which contemplated another order to follow "with facts to be used in any appeal process by either" party. On March 24, 2022, the Commission issued its three-page final order. In that order, the Commission found that the City did not prove that Mr. Graley damaged the property of another City resident because the picture frame that he broke was jointly owned by him and Ms. Wilson. The Commission further found that the City did not prove that Mr. Graley was disrespectful toward a City resident because Ms. Wilson's testimony rebutted the police report and the interaction between Mr. Graley and Mr. Morrison was confrontational but not disrespectful. The Commission found that the City did prove that Mr. Graley refused to obey instructions because Chief White ordered Mr. Graley to come to his office and Mr. Graley disregarded such order. The Commission further found that the City proved that Mr. Graley was arrested outside the workplace. The Commission's order does not specifically decide whether the violation concerning promptly notifying his immediate supervisor of his arrests was proven though it does state that "[d]uring the call to your father to arrange a shift trade, it should have also been a priority to notify your immediate

---

[2] By relationship, it appears that Ms. Wilson meant their relationship as parents. Later in her testimony Ms. Wilson stated that she was getting married to someone other than Mr. Graley.

supervisor or the fire chief of the fact that you were under arrest and in jail." The order also stated that since Chief White testified that he was initially planning to reprimand Mr. Graley, exigent circumstances did not exist. The City appealed to circuit court.

After briefing by the parties, the circuit court entered its final order on October 27, 2022. In that order, the circuit court found that the Commission's order was factually deficient. It stated, "[w]ithout explicit findings of fact by the factfinder, i.e., the Commission, this Court must adopt its own findings of fact consistent with the evidence presented before the Commission." The circuit court went on to note that the Commission failed to consider any of the uncontroverted evidence of the May 30, 2019, incident and the Commission's decision was counter to the evidence presented regarding the two other incidents. The circuit court overturned the order of the Commission and concluded that the termination of Mr. Graley was just and proper. It is from this order that Mr. Graley now appeals.

We apply the following standard of review in appeals from a Civil Service Commission: "A final order of the Civil Service Commission based upon a finding of fact will not be reversed by this Court upon appeal unless it is clearly wrong." Syl. *Billings v. Civil Service Commission*, 154 W.Va. 688, 178 S.E.2d 801 (1971).

> An adjudicative decision of the . . . Civil Service Commission should not be overturned by an appellate court unless it was clearly erroneous, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Review under this standard is narrow and the reviewing court looks to the . . . Commission's action to determine whether the record reveals that a substantial and rational basis exists for its decision.
>
> An appellate court may reverse a decision of the . . . Civil Service Commission as clearly wrong or arbitrary or capricious only if the Commission used a misapplication of the law, entirely failed to consider an important aspect of the problem, offered an explanation that ran counter to the evidence before the Commission, or offered one that was so implausible that it could not be ascribed to a difference in view or the product of Commission expertise.

Syl. Pts. 1 & 2, *In re Queen*, 196 W. Va. 442, 444, 473 S.E.2d 483, 485 (1996). In *Queen,* the Supreme Court of Appeals of West Virginia stated that an appellate court's "review of the circuit court's decision made in view of the Commission's action is generally *de novo.* Thus, we review the Commission's adjudicative decision from the same position as the circuit court." *Id*. at 446, 473 S.E.2d at 487.

On appeal, Mr. Graley asserts that the circuit court erred by essentially undertaking a de novo review of the case. While the wording used by the circuit court appears to suggest

that the circuit court improperly usurped the role of fact finder due to the lack of fulsome findings of fact in the Commission's final order, because we review the Commission's decision from the same position as the circuit court, this alleged error by the circuit court is not dispositive. Rather, the issue before this Court is whether the record reveals a substantial and rational basis for the Commission's decision. After review of the record, we find that the decision of the Commission is not supported by a substantial and rational basis. Further, the final order of the Commission is reversed because the Commission entirely failed to consider important aspects of the case and offered explanations that ran counter to the evidence.

For instance, the Commission failed to consider any of the facts related to the May 30, 2019, incident wherein Mr. Graley was involved in an altercation while drinking in public then followed members of that altercation home after being asked not to, discharged his firearm from his vehicle, and initially lied to law enforcement about his actions. The Commission also failed to consider that Mr. Graley lied about, or minimized, his actions concerning this incident to Chief White.

As it relates to Mr. Graley's two arrests for domestic assault, the Commission's finding that the incidents were "heated conversations of a domestic nature" between "co-antagonists" runs counter to the evidence before the Commission. Although Ms. Wilson's testimony before the Commission attempted to minimize her statements to police, she specifically testified that she was "absolutely not" recanting her prior statements. As outlined above, those statements include troubling threats by Mr. Graley, disrespectful behavior by Mr. Graley toward Ms. Wilson and her mother, Mr. Graley wielding a firearm during the first incident, and Ms. Wilson expressing a fear for her safety, the safety of her children, and the safety of law enforcement. Likewise, the Commission's finding that Mr. Graley was not disrespectful to Mr. Morrison runs counter to the evidence before the Commission. Both Mr. Morrison and Ms. Wilson testified that Mr. Graley told Mr. Morrison that he was going to kill him while wielding steak knives. Mr. Morrison also testified that Mr. Graley got in his face and "chest bumped" him. Such actions are clearly disrespectful of Mr. Morrison, if not worse.

West Virginia Code § 8-15-25 (1996) provides in pertinent part that "[n]o member of any paid fire department subject to the civil service provisions of this article may be removed, discharged, suspended or reduced in rank or pay except for just cause[.]" Just cause has been defined by the Supreme Court of Appeals of West Virginia as a substantial cause:

> which specially relates to and affects the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interest of the public. An officer should not be removed from office for matters which are trivial, inconsequential, or hypothetical, or for mere technical violations of statute or official duty without wrongful intention.

7

*Giannini v. Firemen's Civ. Serv. Comm'n of City of Huntington*, 220 W. Va. 59, 63, 640 S.E.2d 122, 126 (2006) (citation omitted).

"A firefighter's job is characterized by his or her responsibility to the public, and the . . . mental acuity of public safety personnel [is] of utmost significance." *Id*. at 64–65, 640 S.E.2d at 127–28. Here, as discussed above, Mr. Graley had been drinking and followed people home with whom he had been in an altercation, after being asked not to, discharged his firearm while driving, lied to law enforcement, lied to or misled his supervisor, threatened others with deadly weapons on multiple occasions, was arrested multiple times, and repeatedly disrespected others. Such actions demonstrate poor judgment, recklessness, and an inability of Mr. Graley to manage his anger; all of which call into question his mental acuity, ability to reason and to make decisions as a firefighter that affect public safety. Such actions by Mr. Graley constitute misconduct of a substantial nature specially related to and affecting Mr. Graley's ability to perform tasks inherent in being a firefighter. Accordingly, there was just cause for Mr. Graley's immediate termination.

Therefore, we affirm the circuit court's October 27, 2022, order insomuch as it reversed the Commission's March 24, 2022, final order.

Affirmed.


**ISSUED:** December 27, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen