# IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**AARON DALTON,**
**Petitioner Below, Petitioner**

**v.)      No. 25-ICA-132      (Cir. Ct. of Monongalia Cnty. Case No. CC-31-2023-AA-1)**

**CITY OF WESTOVER,**
**Respondent Below, Respondent**

**FILED**
**December 4, 2025**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Aaron Dalton appeals the February 26, 2025, order from the Circuit Court of Monongalia County, denying petitioner's administrative appeal and upholding the decision of the Westover Police Civil Service Commission to terminate Mr. Dalton's employment as a police officer for Respondent City of Westover ("City"). The City filed a response.[1] Mr. Dalton filed a reply.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Prior to his termination, Mr. Dalton was employed by the City as a Lieutenant with the Westover Police Department ("Westover PD"). In August 2021, Mr. Dalton was suspended pending investigation of several misconduct allegations made against him in a petition submitted by eleven coworkers. Following a lengthy investigation, on October 13, 2021, Westover PD Chief, Joseph Adams ("Chief Adams"), and former City Mayor, Cranston David Johnson ("Mayor Johnson"), provided Mr. Dalton with statutory notice of their recommendation to terminate his employment with the City based upon a statement of charges, which cited violations of Westover PD's rules and regulations, provisions of the City's personnel policy manual, and other violations of law. Relevant to this appeal, Mr. Dalton was accused of creating a hostile work environment by engaging in acts of sexual harassment and verbal abuse and threats towards his coworkers, including the use of ethnic slurs and other offensive remarks and gestures towards his coworkers. These violations also related to several Facebook posts made by Mr. Dalton after his August 2021 suspension, which contained derogatory statements and inflammatory allegations

---

[1] Mr. Dalton is represented by Christian J. Riddell, Esq. The City is represented by Peter T. DeMasters, Esq.

regarding the Westover PD and certain current and former employees. In one post, Mr. Dalton accused a department lieutenant of theft; another claimed that a fellow Westover PD officer was unfit, mentally unstable, and had failed a psychological examination; and a third post claimed that another Westover PD officer was a pedophile and rapist who was terminated from another police department for those acts.

In response to the notice of termination, Mr. Dalton exercised his statutory right to a predisciplinary hearing before a hearing board. *See* W. Va. Code § 8-14a-3 (1997);[2] Syl. Pt. 4, *Alden v. Harpers Ferry Police Civ. Serv. Comm'n*, 209 W. Va. 83, 543 S.E.2d 364 (2001) (holding that pursuant to West Virginia Code § 8-14A-3(b), "before a civil service officer may be disciplined through discharge . . . he/she must be afforded a predisciplinary hearing before a hearing board. . . .").

A hearing board heard the matter on January 14, 2022, and on February 28, 2022, it issued a decision sustaining the statement of charges and adopting the recommendation to terminate Mr. Dalton's employment. Mr. Dalton appealed the hearing board's decision on March 11, 2022, and requested a hearing before the Commission pursuant to West Virginia Code § 8-14-20 (1996). Also, on September 26, 2022, Mr. Dalton filed a motion requesting an amended statement of charges, contending that the October 13, 2021, statement of charges did not state the allegations against him with specificity as required by West Virginia Code § 8-14-20. The Commission granted the motion by order entered on November 1, 2022. It is undisputed that the City complied and provided an amended statement with more detailed factual allegations for the violations contained in the original statement of charges. After the Commission granted the motion, Mr. Dalton filed a second

---

[2] West Virginia Code § 8-14A-3 provides in relevant part:

(a) Before taking any punitive action against an accused officer, the police or fire department shall give notice to the accused officer that he or she is entitled to a hearing on the issues by a hearing board or the applicable civil service commission. The notice shall state the time and place of the hearing and the issues involved and shall be delivered to the accused officer no later than ten days prior to the hearing.

(b) When a civil service accused officer faces a recommended punitive action of discharge, suspension or reduction in rank or pay, but before such punitive action is taken, a hearing board must be appointed and must afford the accused civil service officer a hearing conducted pursuant to the provisions of article fourteen, section twenty, or article fifteen, section twenty-five of this chapter: Provided, That the punitive action may be taken before the hearing board conducts the hearing if exigent circumstances exist which require it.

motion seeking reinstatement to administrative leave and backpay. Mr. Dalton maintained that the amended statement of charges superseded the original charges; therefore, he argued that his termination and removal from administrative leave was not effective until November 16, 2022. The Commission held the motion in abeyance pending the hearing on the charges.

Mr. Dalton's Commission hearing was held over several days: February 20, 2023, February 22, 2023, March 24, 2023, and May 8, 2023. During the hearing, the Commission heard testimony from numerous witnesses, including the eleven petitioning coworkers who each testified that they witnessed Mr. Dalton's conduct, were the victims of Mr. Dalton's conduct, or had conversations with Mr. Dalton in which he boasted about his misconduct. Chief Adams and his predecessor, Richard Eugene Panico, Jr. ("Chief Panico"), Mayor Johnson, and Mr. Dalton, among others also testified.

Namely, Chief Adams' testimony detailed his investigation into Mr. Dalton's Facebook posts and the accusations Mr. Dalton made in those posts against other officers, which were determined to be unfounded. Chief Adams opined that Mr. Dalton made the Facebook posts in retaliation for his suspension. He also testified that the violations were based upon the same policies and regulations that Mr. Dalton was subject to during Chief Panico's tenure, that Chief Panico used those authorities to discipline other officers in the past, and that the policies and regulations were in full force and effect for Westover PD employees because every petitioning officer Chief Adams interviewed readily identified the policies and regulations. Chief Adams believed all of Mr. Dalton's established violations were substantial and affected the rights and interests of the public, and that there was sufficient cause to terminate Mr. Dalton's employment. Lastly, Chief Adams indicated that he made the recommendation to terminate Mr. Dalton's employment, and Mayor Johnson endorsed his recommendation.

Although not directly addressed by Commission's or circuit court's order, Mr. Dalton relies on Chief Panico's testimony on appeal. Chief Panico testified that he was the commanding officer who suspended Mr. Dalton in August 2021.[3] However, Chief Panico stated that the initial suspension was not for inappropriate workplace conduct; instead, those complaints arose once he was no longer chief. Mr. Dalton relies on Chief Panico's testimony that while he was chief, there were no formal policies in place, and he did not enforce any type of restrictions on office unprofessionalism or inappropriate comments during his tenure. According to Mr. Dalton, Chief Panico's testimony "quite literally disparaged the various complaints among the officers regarding inappropriate workplace comments as matters beneath his concern."

Similarly, Mr. Dalton relies on Mayor Johnson's testimony on appeal, which is not discussed in the Commission's decision. Specifically, Mr. Dalton notes that Mayor

---

[3] The record indicates that Chief Adams assumed his position in October 2020.

Johnson acknowledged that he was the removing officer who signed off on Chief Adams' recommendation to terminate Mr. Dalton's employment but testified in hindsight he did not think Mr. Dalton should have been terminated. However, it is undisputed that Mayor Johnson took no action to rescind his recommendation or Mr. Dalton's termination while he was mayor.

Mr. Dalton testified and offered explanations for each of the violations and his failure to comply with the City's and Westover PD's policies and regulations. The Commissioner's order expressly found that Mr. Dalton's testimony was not credible.

On September 13, 2023, the Commission entered its final order finding that the City had established by a preponderance of the evidence that Mr. Dalton's conduct was unbecoming of a police officer, created a hostile work environment, and established just cause for his termination.

Particularly, the Commission found that the record established that Mr. Dalton harassed a department secretary by walking by her desk, holding his fist in the air and exclaiming "white power," knowing that she had biracial grandchildren. Mr. Dalton then bragged about the gesture to a fellow officer. One Westover PD officer testified that they witnessed Mr. Dalton, in the presence of that secretary, point to photographs of the coworkers' grandchildren, refer to her daughter as a "n***er lover," and raise his fist and say, "white power." Another officer testified that Mr. Dalton's specific conduct towards that secretary occurred on multiple occasions.

Another Westover PD officer's testimony established that Mr. Dalton, who was his superior officer, threatened to physically assault him, in addition to making derogatory and racially-offensive comments to the officer about his Japanese heritage and the race of others at the department. This officer indicated that Mr. Dalton regularly targeted and threatened officers he did not like and that his conduct fostered a threatening and hostile work environment. Mr. Dalton's practice of targeting other officers was corroborated by other witnesses. For example, there was testimony that Mr. Dalton openly accused another officer of being a "Mexican" rapist and pedophile; Mr. Dalton threatened to kill a different Westover PD officer in front of fellow officers; he continuously harassed a subordinate officer for praying before meals and told that officer that his biracial nephew would do well in the military because he was an "athletic monkey"; and that another officer was openly belittled and subjected to sexually threatening comments from Mr. Dalton on a regular basis, which included Mr. Dalton threatening to "beat the f**k out of him."

Likewise, there was testimony of Mr. Dalton hazing another officer during training; using the "n-word" and making racially insensitive jokes around a black officer; retaliating against a Westover PD sergeant who turned in complaints that were made against Mr. Dalton; and telling a female officer that women had no place in law enforcement and threatened that if she ever reported him for sexual harassment, he would force another

4

officer to make false sexual allegations against her. The Commission's order also noted the nature of Mr. Dalton's Facebook posts.

Thereafter, the Commission concluded that the Facebook posts contained false allegations, which were intended to harm the reputations of the affected individuals and damage the public's trust in the department. The Commission found that the posts violated City and Westover PD policy, and that the posts alone were just cause for termination.

Collectively, the Commission found that all the evidence established a pattern of abusive behavior by Mr. Dalton. Specific to this appeal, the Commission determined that Mr. Dalton's actions violated the City's personnel policies regarding insubordination, creating a hostile work environment, workplace misconduct, and sexual harassment. Additionally, the Commission found that Mr. Dalton violated Westover PD policies, which prohibited creating a hostile work environment, engaging in conduct unbecoming of a law enforcement officer, and failing to comply with established department procedures. It was also determined that Westover PD policy indicates that all department members may be terminated for cause.

Thereafter, the Commission noted the requirement of "just cause" under West Virginia Code § 8-14-20 "means misconduct of a substantial nature directly affecting the rights and interests of the public, rather than upon trivial or inconsequential matters, or mere technical violations of statute or official duty without a wrongful intention." *Giannini v. Firemen's Civil Serv. Comm'n of City of Huntington*, 220 W. Va. 59, 63, 640 S.E.2d 122, 126 (2006) (quotations and citations omitted). "[D]ismissal is appropriate where the alleged misconduct constitutes a substantial violation directly affecting the rights and interests of the public." *Id.* The Commission concluded that Mr. Dalton's conduct damaged his credibility with peers, supervisors, and members of the community who were negatively impacted by his actions; and his repeated violations demonstrate irresponsible and incompetent conduct, which has resulted in the Westover PD losing faith, trust, and confidence in Mr. Dalton's abilities as a police officer. As such, the Commission found that the totality of Mr. Dalton's conduct established just cause for his termination.

Mr. Dalton appealed the Commission's decision to circuit court on December 11, 2023. Before the circuit court, Mr. Dalton argued that the Commission violated his due process rights by impermissibly basing its ruling upon Mr. Dalton's violations of policies, which according to the testimony of Chief Panico, did not exist at the time Mr. Dalton's conduct occurred. Next, Mr. Dalton contended that the termination was invalid because West Virginia Code § 8-14-20 requires the "removing officer" to show just cause for the termination. Here, Mr. Dalton noted that Mayor Johnson was the removing officer, and that Mayor Johnson's testimony established that while he took responsibility for the decision to terminate Mr. Dalton, he did not believe that Mr. Dalton's termination was necessary. Thus, Mr. Dalton contended that no one could meet the requirements of West Virginia Code § 8-14-20 to sustain the termination of his employment. Lastly, Mr. Dalton

argued that even if his termination is valid, the Commission erred by not awarding Mr. Dalton backpay after finding that the October 13, 2021, statement of charges was insufficient.[4] Mr. Dalton maintained that he is entitled to backpay from the time the original statement of charges was issued through the filing of the amended statement of charges on November 16, 2022. In other words, Mr. Dalton claims that because the original statement of charges was found to be insufficient, the effective date of his termination and removal from administrative leave can only be November 16, 2022, when the amended statement was filed.

Following a hearing before the circuit court on July 16, 2024, and the parties' submission of proposed findings of fact and conclusions of law, the circuit court entered its order denying Mr. Dalton's administrative appeal on February 26, 2025. In its order, the circuit court found that the Commission's decision was not clearly wrong, arbitrary, or capricious, and that the Commission's ruling was plausible in light of the entire record. Notably, the court found that there was evidence that the City and Westover PD had policies in effect at the time of Mr. Dalton's offending conduct; Mayor Johnson made the decision to terminate Mr. Dalton, took no action in his official capacity to rescind that decision, and now, as a private citizen, has no power to rescind the termination; and that Mr. Dalton was not entitled to backpay because the amended statement of charges related back to the original statement and was requested by Mr. Dalton. Therefore, Mr. Dalton's termination was effective on October 13, 2021, when the original statement of charges was issued to Mr. Dalton. The court's order affirmed the Commission's decision and sustained Mr. Dalton's termination. This appeal followed.

In this appeal, we are guided by a well-established standard of review. The Supreme Court of Appeals of West Virginia ("SCAWV") recently summarized this standard in *Jarrell v. City of Nitro*, 244 W. Va. 666, 672, 856 S.E.2d 625, 631 (2021) as follows:

> The well-settled standard of review in police civil service commission appeals requires courts to give deference to the commission's factual findings. "A final order of the Civil Service Commission based upon a finding of fact will not be reversed by this Court upon appeal unless it is clearly wrong." Syl. Pt. 1, *Giannini v. Firemen's Civil Serv. Comm'n of Huntington*, 220 W. Va. 59, 640 S.E.2d 122 (2006) [(internal citations and quotations omitted)]. Similarly, "[a] final order of a police civil service commission based upon a finding of fact will not be reversed by a circuit court upon appeal unless it is clearly wrong or is based upon a mistake of law." *Giannini*, [at 59, 640 S.E.2d at 122, syl. pt. 2 (internal quotations and

---

[4] The Commissioner's final order did not address Mr. Dalton's motion; however, Mr. Dalton does not cite error or seek remand for a Commission ruling on that issue in circuit court. Rather, in both circuit court and in this appeal, Mr. Dalton frames the Commission's silence as a de facto denial of the motion.

citations omitted)]. To the extent that "the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 3, *Alden v. Harpers Ferry Police Civ. Serv. Comm'n*, 209 W. Va. 83, 543 S.E.2d 364 (2001) (internal quotation marks and citation omitted).

The same standards of review apply to correctional officer civil service commission appeals, which this Court explained in syllabus points one and two of *In re Queen*, 196 W. Va. 442, 473 S.E.2d 483 (1996), as follows:

> 1. An adjudicative decision of the Correctional Officers' Civil Service Commission should not be overturned by an appellate court unless it was clearly erroneous, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. Review under this standard is narrow and the reviewing court looks to the Civil Service Commission's action to determine whether the record reveals that a substantial and rational basis exists for its decision.
>
> 2. An appellate court may reverse a decision of the Correctional Officers' Civil Service Commission as clearly wrong or arbitrary or capricious only if the Commission used a misapplication of the law, entirely failed to consider an important aspect of the problem, offered an explanation that ran counter to the evidence before the Commission, or offered one that was so implausible that it could not be ascribed to a difference in view or the product of Commission expertise.

*Id.*

On appeal, Mr. Dalton's assignments of error are the same as those raised in circuit court. We will address each argument in turn. First, Mr. Dalton reiterates his contention that his termination was erroneously predicated on his violation of policies which were not yet in effect, to the deprivation of his due process rights because he holds property and liberty interests in his employment. Mr. Dalton contends that while the City offered no evidence to establish when the policies went into effect, to the contrary, Chief Panico testified that there were no policies prohibiting Mr. Dalton's conduct when it occurred, and that his testimony is unrefuted. Mr. Dalton uses this testimony to assert that because Chief Panico suspended him for other reasons, it is conclusive evidence that no policies existed until *after* Mr. Dalton engaged in the conduct. Therefore, the Commission's finding of any policy violation was arbitrary and capricious. Mr. Dalton contends that his argument is

7

supported by the same principles that prohibit the imposition of ex post facto laws and apply the rule of lenity in criminal cases. He further argues that the circuit court's order summarily concludes that the City and Westover PD had policies in effect without establishing support from the record, or consideration of Mr. Dalton's uncontroverted evidence to the contrary.

Stated another way, the nexus of Mr. Dalton's argument is that he deems Chief Panico's testimony sacrosanct on this issue. As a result, he concludes that Chief Panico's testimony is definitive evidence that there were no policies for Mr. Dalton to violate. We find no merit in Mr. Dalton's argument on this issue.

Mr. Dalton's argument on this issue spends an inordinate amount of time framing the issue as one of constitutional due process. However, in doing so, he overlooks the established case law, which renders a constitutional due process analysis on this issue unnecessary and a red herring to our resolution of this appeal.

We begin by noting that Mr. Dalton's contention that the City offered no evidence to establish the existence of the subject policies conflicts with the record. The Commission's order expressly sets forth that Chief Adams testified that the policies were in effect during Chief Panico's tenure and used by him to discipline employees, and that the officers Chief Adams interviewed had knowledge of the policies. Further, Mr. Dalton's argument is based purely on the premise that Chief Panico's testimony is superior to any other evidence on this issue.

However, this is purely an issue of credibility. *See Michael D.C. v. Wanda L.C.*, 201 W. Va. 381, 388, 497 S.E.2d 531, 538 (1997) (citation omitted) ("A reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations[,] and this Court is not in a position to, and will not, second guess such determinations."); *Sims v. Miller*, 227 W. Va. 395, 402, 709 S.E.2d 750, 757 (2011) ("the hearing examiner who observed the witness testimony is in the best position to make credibility judgments."); *Vogt v. Macy's, Inc.*, No. 22-ICA-162, 2023 WL 4027501, at *6 (W. Va. Ct. App. June 15, 2023) (memorandum decision) (declining to disturb credibility determinations on appeal). Here, the Commission held an evidentiary hearing and was in the best position to observe witnesses and weigh the evidence in reaching its decision. Thus, we find no clear error in the Commission's decision and give deference to its findings on this issue.

Moreover, even if the record did not establish the existence of governing policy, Mr. Dalton would still be subject to termination. On more than one occasion, the SCAWV has indicated that "seriously wrongful conduct can lead to dismissal even if it is not a technical violation of any statute. . . . The test is not whether the conduct breaks a specific law, but rather whether it is potentially damaging to the rights and interests of the public." *Mangum v. Lambert*, 183 W. Va. 184, 189, 394 S.E.2d 879, 884 (1990) (quoting *W. Va. Dep't of*

*Corrections v. Lemasters*, 173 W. Va. 159, 162, 313 S.E.2d 436, 439 (1984)). *See also Drown v. W. Va. Civ. Serv. Comm'n*, 180 W. Va. 143, 145, 375 S.E.2d 775, 777 (1988) (same); *Thurmond v. Steele*, 159 W. Va. 630, 635, 225 S.E.2d 210, 213 (1976) (noting that a civil service employee may be terminated if their "misconduct is of a substantial nature and can be shown to affect directly the rights and interests of the public by bearing directly in a substantial manner on the duties which the employee is required to discharge[.]").

Mr. Dalton's brief does not attempt to reconcile this principle, let alone directly challenge the veracity of the Commission's factual findings with respect to his workplace conduct as clearly established by officer testimony. In this case, the Commission found, among other things, that the nature of Mr. Dalton's conduct was substantially detrimental to Westover PD's image, damaged Mr. Dalton's credibility and trustworthiness with his colleagues and the public, and exhibited his lack of fitness for his job. The circuit court determined that these findings were amply supported by the record. Upon review, we decline to disturb that determination.

Next, Mr. Dalton argues that the Commission did not have the authority to uphold his termination because Mayor Johnson, the removing officer, did not meet his burden of proof that there was just cause for the termination. W. Va. Code § 8-14-20. This argument is predicated on Mr. Johnson's acknowledgment before the Commission that even though he recommended Mr. Dalton's termination, he did not believe his conduct warranted termination. In Mr. Dalton's opinion, this establishes that Mayor Johnson had no intention to terminate Mr. Dalton. We are not persuaded by this contention. While the circuit court rejected this argument by reasoning that Mayor Johnson did not rescind the termination during his tenure and lacked standing to do so as a private citizen, we do not need to reach those same conclusions to find no error in the Commission's decision.

Here, Mr. Dalton offers no specific authority to support his contention that the variance between Mayor Johnson's actions and hearing testimony vindicates Mr. Dalton of the charges against him. He also does not cite to the record to establish where he raised this issue before the Commission. *See State Dep't of Health and Human Res. v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) ("[a] skeletal 'argument,' really nothing more than an assertion, does not preserve a claim[.]" (internal citations omitted)). Instead, the record shows that Mayor Johnson accepted Chief Adams' recommendation of termination, endorsed the recommendation, provided Mr. Dalton with appropriate notice, submitted the recommendation to proceed through the civil service process, and did not take any official action to withdraw his recommendation. Mr. Dalton cites no supportive authority for his argument and, thus, we find that his reliance upon pure conjecture cannot establish error.

Finally, Mr. Dalton argues that even if his termination is valid, the Commission and circuit court erred by failing to award him backpay pursuant to West Virginia Code § 8-14-20(a). Parallel to his contention in circuit court, he argues that because the Commission

granted his motion for an amended statement of charges, the original charges from which Mr. Dalton was first terminated and removed from administrative leave were of no force and effect. Thus, he maintains that the amended charges did not relate back to the original, and as a result, he was effectively reinstated to administrative leave until he was served the amended statement of charges in November 2022. We are unpersuaded by this argument.

In relevant terms, West Virginia Code § 8-14-20(a) states that "[n]o member . . . may be removed, discharged, suspended or reduced in rank or pay except for just cause . . . and in no event until the member has been furnished with a written statement of the reasons for the action." Here, the record establishes that the City provided Mr. Dalton with notice of his original charges in October of 2021 and provided an amended statement of charges in November of 2022.[5] Thus, our resolution of this issue centers on whether the amended statement of charges relates back the original charges. We find that it does.

Significant to this case, there is no dispute that the amended statement of charges simply provided further factual allegations for the original charges and did not allege any new violations. This point is underscored by Mr. Dalton's brief, which explains: "The [s]tatement of [c]harges was subsequently amended to provide more detailed factual allegations related to these violations, but the violations and categories in the [a]mended [s]tatement of [c]harges remained the same." Further, we recognize that Mr. Dalton's termination has been upheld at every stage of his civil service proceeding. Moreover, we note that Mr. Dalton cites no authority to support his position; instead, he attempts to establish error through supposition and conjecture. Indeed, this is insufficient to establish error. Therefore, we find that Mr. Dalton is not entitled to relief on this issue.

Accordingly, we find no reversible error and affirm the circuit court's February 26, 2025, order.

Affirmed.

**ISSUED:** December 4, 2025

**CONCURRED IN BY:**

Chief Judge Charles O. Lorensen
Judge Daniel W. Greear
Judge S. Ryan White

---

[5] The statute further states "in the event the removing officer fails to show just cause . . . then the member shall be reinstated with full pay . . . for the entire period during which the member may have been prevented from performing his or her usual employment[.]" *Id.* However, given the Commission's decision, this language is inapplicable.